■ PRESBYTERIAN HOSPITAL IN THE CITY OF NEW YORK, as Assignee of DAWN M. MARTINEZ, et al., Appellants, v ATLANTA CASUALTY COMPANY, Respondent. [619 NYS2d 337] —In an action to recover no-fault medical payments under an insurance contract, the plaintiffs appeal from so much of an order of the Supreme Court, Nassau County (McCaffrey, J.), dated October 6, 1993, as, upon reargument, adhered to its original determination denying the plaintiffs' motion for summary judgment and granting the defendant's cross motion for summary judgment dismissing the complaint.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the defendant's cross motion for summary judgment is denied, the plaintiffs' motion for summary judgment is granted, and the matter is remitted to the Supreme Court, Nassau County, for entry of a judgment in favor of the plaintiffs and against the defendant in the principal sum of $7,786.21 plus interest from August 27, 1992, the date when the defendant notified the plaintiff Joseph Henig, P. C. that it was purportedly disclaiming coverage.

Dawn Martinez sought treatment for headaches and dizziness following an automobile accident on March 8, 1991, in which she had sustained, *inter alia,* a concussion. At the time of the accident, Martinez and her vehicle were concededly covered by the defendant's no-fault insurance policy. Diagnostic imaging revealed a brain lesion that could have been either an acute brain injury (i.e., a contusion), or a tumor. When the intracranial "mass did not resolve", surgery was performed and a "low grade glioma" or "astrocytoma" was found and excised.

With a cover letter dated July 2, 1992, the plaintiff Presbyterian Hospital in the City of New York, by its attorney and coplaintiff Joseph Henig, P. C., mailed a Hospital Facility Form (NYS Form N-F-5) and a NYS Form UBF-1 to the defendant Atlanta Casualty Company (hereinafter Atlanta Casualty) for payment of its hospital bill in the principal sum of $7,786.21. The admitting diagnosis of a suspected brain tumor was clearly entered on the form. The only reply the plaintiffs received was an unsigned letter from Atlanta Casualty's claims representative, dated July 20, 1992, informing the Hospital that Atlanta Casualty was in the process of obtaining an independent review of Martinez' bills in order to determine whether all of the medical charges related to her accident. At no point did Atlanta Casualty issue a formal Denial of Claim to the plaintiffs, although on August 27, 1992,

it sent another unsigned letter to Joseph Henig, P. C., refusing to pay for any treatments or procedures relating to the insured's brain tumor on the ground that such a condition did not arise from her motor vehicle accident.

According to the statutory scheme governing payment of no-fault benefits, "[w]ithin 30 calendar days after proof of claim is received, the insurer *shall* either pay or deny the claim in whole or in part" (11 NYCRR 65.15 [g] [3]; emphasis supplied). Appended to 11 NYCRR 65.15 is an assortment of "prescribed * * * forms that *must* be used by *all* insurers, and *shall not be altered*" (11 NYCRR 65.15 [c] [3]; emphasis supplied). Among these is "(x) Denial of Claim Form (NYS Form N-F 10)". This form provides for the insurer to deny a claim on the ground, *inter alia,* that the "[i]njuries did not arise out of use or operation of a motor vehicle", and/or because the "[t]reatment [is] not related to [the] accident" (11 NYCRR Appendix 13-A, N-F 10 [7], [20]). It would therefore appear from the N-F 10 form itself that the usual 30-day limit is applicable to an insurer's denial of a claim based upon its assessment that the injured person's condition and/or treatment is unrelated to his/her automobile accident.

In denying a claim, further extensions are permitted if the insurer serves demands for "verification"—which did not happen here (11 NYCRR 65.15 [d] [1], [2], [3]). A *"letter"* of disclaimer is permissible, provided that it is approved by the New York State Department of Insurance, issued in duplicate, and "contains substantially the same information as the prescribed form which is relevant to the claim denied" (11 NYCRR 65.15 [g] [3] [i]; emphasis supplied). No such letter was ever sent by the insurer in this case, where the only correspondence received by the plaintiffs was an unsigned letter purporting to reserve Atlanta Casualty's right to disclaim at some future, unspecified date *(see, Hartford Ins. Co. v County of Nassau,* 46 NY2d 1028; *Progressive Cas. Ins. Co. v Conklin,* 123 AD2d 6).

The No-Fault Law is in derogation of the common law and so must be strictly construed *(Bennett v State Farm Ins. Co.,* 147 AD2d 779, 781; *Maxwell v State Farm Mut. Auto. Ins. Co.,* 92 AD2d 1049, 1050). Where, as here, a carrier has failed to comply with the foregoing statutory schedule, "preclusion of the insurance company's ability to deny the claim is the appropriate remedy" *(Loudermilk v Allstate Ins. Co.,* 178 AD2d 897, 898; *Bennett v State Farm Ins. Co., supra).*

This is not a case like those relied upon by the defendant where the claimant, the vehicle, or the subject event was

facially outside of the four corners of the insurance contract *(cf., Zappone v Home Ins. Co.,* 55 NY2d 131, 134; *Schiff Assocs. v Flack,* 51 NY2d 692; *Employers Ins. v County of Nassau,* 141 AD2d 496). The evidence reveals that Martinez' brain lesion was either the result of a contusion suffered in the accident, or a brain tumor. Under the terms of her no-fault insurance policy the medical treatment of her symptoms was covered, either on the theory that the lesion which caused them was sustained in the accident or was a preexisting condition which was aggravated by the accident (11 NYCRR 65.15 [m] [1]). Ritter, J. P., Santucci, Freidmann and Goldstein, JJ., concur.