90 N.Y.2d 274 (1997)
683 N.E.2d 1
660 N.Y.S.2d 536
Presbyterian Hospital in the City of New York, as Assignee of Karen DeGuisto, Respondent,
v.
Maryland Casualty Company, Appellant.
Court of Appeals of the State of New York.
Argued May 1, 1997
Decided June 10, 1997.
Short & Billy, P. C., New York City (Michael Billy, Jr., of counsel), for appellant.
Joseph Henig, P. C., Bellmore (Joseph Henig and Gregory Henig of counsel), for respondent.
Chief Judge KAYE and Judges SMITH and CIPARICK concur with Judge BELLACOSA; Judge WESLEY dissents and votes to reverse in a separate opinion in which Judges TITONE and LEVINE concur.
*277 BELLACOSA, J.
Plaintiff-respondent Presbyterian Hospital sues to recover no-fault medical payments for services and treatment provided to an insured of defendant-appellant Maryland Casualty Company. We must resolve whether the lower courts properly precluded Maryland from raising an intoxication defense in the ensuing lawsuit on the ground that it did not timely deny the subject no-fault claim pursuant to both the Superintendent's regulations and the Insurance Law (see, 11 NYCRR 65.15 [g] [3]; Insurance Law § 5106 [a]).
Supreme Court granted Presbyterian's motion for summary judgment, awarding approximately $26,000 in no-fault benefits, statutory interest and attorney's fees. The Appellate Division affirmed and we granted Maryland leave to appeal. We, too, affirm.

I.
Karen DeGuisto was hurt in a single-car accident on December 26, 1993, when the automobile she was driving hit a utility pole. Maryland was her no-fault insurer. She was admitted to Presbyterian Hospital in New York City on two separate occasions for treatment of her injuries. Only the medical expenses for the hospitalization and treatment rendered from June 7 to June 10, 1994 are the subject of this lawsuit.
On August 5, 1994, Presbyterian presented a no-fault claim form, as the insured's assignee, seeking first-party benefits. Maryland received the document on August 9, 1994. On September 15, 1994, by which time the insurer had neither paid nor denied the claim, the hospital sued to recover the benefits. Maryland interposed an answer with an affirmative defense stating that the claim was not overdue because it had not yet received all of the available information relating to the incident, such as a police report on the insured's blood-alcohol test results.
Maryland had applied to the police department for public access to the insured's blood-alcohol test results on April 19, 1994, after receiving a police accident report noting alcohol on DeGuisto's breath and that a blood specimen had been taken. On October 13, 1994, Maryland requested verification of the insured's alleged intoxication from Presbyterian in the form of interrogatories. Subsequently, on November 3, 1994, the insurer requested the blood-alcohol test results from the local District Attorney's office.
*278 On November 7, 1994, Presbyterian moved for summary judgment, asserting that Maryland's failure to timely deny the claim barred interposition of the intoxication defense in the action. Thereafter, on December 5, 1994, Maryland received the test results, which indicated a blood-alcohol level of 0.13% at the time of the insured's accident. Maryland issued a denial of the claim that same day.
The Appellate Division affirmed Supreme Court's grant of summary judgment to Presbyterian, stating that "[r]ecent precedent squarely holds that `"preclusion of the insurance company's ability to deny the claim is the appropriate remedy"' where, as here, the insurance company neither denies a claim within 30 days after receiving it nor seeks to extend that time by requesting verification in the prescribed forms" (226 AD2d 260, 261). It is on that singular, narrow basis that we affirm.

II.
Maryland first argues that it properly and timely denied the hospital's no-fault claim. We disagree. Resolution of this issue, however, involves consideration of a complex sequence and interplay of insurance regulations governing the time requirements for delaying or denying payment of a no-fault automobile claim on intoxication exclusion grounds.
Pursuant to both the Insurance Law and the regulations promulgated by the Superintendent of Insurance, an insurer is required to either pay or deny a claim for no-fault automobile insurance benefits within 30 days from the date an applicant supplies proof of claim (see, Insurance Law § 5106 [a]; 11 NYCRR 65.15 [g] [3]). Failure to pay benefits within the 30-day requirement renders benefits "overdue," and all overdue payments bear interest at a rate of 2% per month (Insurance Law § 5106 [a]; 11 NYCRR 65.15 [h]). Additionally, a claimant is entitled to recover attorney's fees where a "valid claim or portion" was denied or overdue (Insurance Law § 5106 [a]; 11 NYCRR 65.15 [i]). Notably, interest and attorney's fees are prescribed sanctions only in late payment circumstances, not as to untimely denials of claims.
When a denial of no-fault benefits rests on the statutory exclusion of intoxication (see, Insurance Law § 5103 [b] [2]), the Superintendent's regulations trigger a series of additional timing and notification requirements. Initially, upon determining that benefits may not be payable due to the insured's intoxication, *279 the insurer must notify the applicant within 10 business days of its denial of the claim (11 NYCRR 65.15 [g] [5]). Failure to satisfy this 10-day requirement, however, expressly does not result in preclusion against an insurer ultimately asserting such a defense to payment (11 NYCRR 65.15 [g] [5]).
Pertinently, when an insurer believes that intoxication may have been a contributing cause to an accident, the insurer is entitled to all available information regarding the insured's condition at the time of the accident (11 NYCRR 65.15 [g] [7]). "Proof of a claim shall not be complete until the information which has been requested, pursuant to paragraph (d) (1) or (2) of this section, has been furnished to the insurer by the applicant or the authorized representative" (11 NYCRR 65.15 [g] [7]). In order to properly and timely request such information, the insurer must forward the prescribed verification forms to the parties required to complete them within 10 business days after receipt of the completed application (11 NYCRR 65.15 [d] [1]). Notably, "[t]he insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested" (11 NYCRR 65.15 [d] [1]). Finally, "[a] failure to observe any of the time frames specified in this section shall not prevent an insurer from requiring proper proof of claim" (11 NYCRR 65.15 [g] [6]).

A.
Maryland's primary contention in this timing-and-remedy facet of the dispute is that the no-fault regulations allow the insurer to delay payment or denial of a claim by requesting verification from third parties. The insurer argues that 11 NYCRR 65.15 (g) (7) does not require it to request proof of claim directly from the applicant, here Presbyterian. Rather, it specifically refers to 11 NYCRR 65.15 (d) (1), which provides that "[t]he insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested." The insurer thus asserts that its eventual request of the insured's blood-alcohol test results from the District Attorney brought it within this regulation and, in effect, tolled its time-controlled denial of payment requirement.
We note in this connection that the insurer already had "reason to believe that the applicant was operating a motor vehicle while intoxicated" (see, 11 NYCRR 65.15 [g] [7]) on August 9, 1994, when the insurer received Presbyterian's claim for payment. We reiterate that the record shows that as early as *280 April 19, 1994, Maryland had applied to the police department for access to the insured's blood-alcohol test results. That evident awareness triggered its responsibility to submit the prescribed verification forms to the appropriate parties within 10 days after receipt of Presbyterian's completed application, which occurred on August 9, 1994 (see, 11 NYCRR 65.15 [d] [1]). Whether the pertinent forms relate to the specific problem underlying this case is irrelevant, since the carrier chose to sit on its rights and do nothing in this respect.
Maryland, instead, did not request verification or proof from Presbyterian, the applicant, until October 13, 1994, well beyond 10 days from receipt of proof of the claim. Furthermore, this distinct request for information was made in the form of interrogatories, not on or in conjunction with the requisite prescribed verification forms. Additionally, Maryland's request of the insured's blood-alcohol test results from the District Attorney was not made until November 3, 1994. That official, in any event, would not qualify as the applicant's authorized agent under this regulation. Thus, even accepting Maryland's contention that verification may be requested from third parties, it utterly failed to timely do so in any respect, pursuant to section 65.15 (d) (1). Its threshold argument in this regard, thus, fails to carry its theory.
We note that the dissent's proffered analysis in this regard is inconsistent with the plain language of the regulations. In order for the insurer to have properly and timely requested the blood alcohol test results, it had to forward prescribed verification forms to the appropriate parties within 10 days after receipt of the completed application (see, 11 NYCRR 65.15 [d] [1]). The insurer utterly and flatly failed to do so and, thus, chose or neglected to take advantage of its prescribed extension of time opportunity for considering denial of the hospital's claim. Despite the dissent's differing view of the Superintendent's requirement in this respect, we and the parties are bound by its plain language.

B.
Maryland next argues that when, as here, an insurer denies coverage based on the statutory exclusion of intoxication, the 30-day rule does not even apply. It urges that the situation instead is governed solely by the 10-day rule in 11 NYCRR 65.15 (g) (5). That regulation expressly eliminates any preclusion consequence for such untimely action.
A plain reading of the regulations  as much as is reasonably possible amidst such a thicket  suggests that the 10-day *281 denial requirement in 11 NYCRR 65.15 (g) (5) is not exclusive and does not avoid the application of the 30-day rule in 11 NYCRR 65.15 (g) (3) and Insurance Law § 5106 (a). Rather, the interrelationship between the 30-day requirement and the 10-day requirement warrants a complementary consideration when an insurer tries to avoid payment of first-party assigned benefits on the basis of an exclusion due to an insured's intoxication. In other words, 11 NYCRR 65.15 (g) (5) imposes a distinct and additional time requirement on insurers who wish to rely on the statutory exclusion of intoxication.
In Keith v Liberty Mut. Fire Ins. Co. (118 AD2d 151), the Appellate Division concluded that when an insurer denies no-fault benefits based on the statutory exclusion of intoxication, "the regulations contain the separate requirement that the insurer notify the applicant of its decision to deny benefits within 10 business days of when the determination to deny is made" (id., at 154 [citing now-11 NYCRR 65.15 (g) (5) (iii)]). Similarly, in Presbyterian Hosp. v Maryland Cas. Co. (226 AD2d 613, lv dismissed 89 N.Y.2d 916), the companion case to the instant matter, the court expressly rejected a similar, narrow, either/or interpretation by the insurer.
We can find no evidence indicating that 11 NYCRR 65.15 (g) (5) was intended to displace the 30-day requirement of 11 NYCRR 65.15 (g) (3) or that it should have the more potent effect of obviating the pertinent statutory language of Insurance Law § 5106 (a). The insurer's more restrictive contention and interpretation is not otherwise supportable in logic, analysis or policy, because it would frustrate a core and essential objective in these particular insurance regulations  that is, to provide a tightly timed process of claim, disputation and payment.
Therefore, since Maryland neither denied the claim within 30 days after receiving it nor properly sought to extend that time frame by requesting verification, using the prescribed forms, within 10 days after receipt of the hospital's completed application, it failed to comply with its obligation to timely deny or disclaim Presbyterian's no-fault claim.

III.
That predicate being so, Maryland and the dissent nevertheless also assert that preclusion of an exclusion defense in an eventual action is an unavailable remedy under both the Insurance Law and Insurance Department regulations. This argument essentially hinges on predicates that (1) the common *282 law does not preclude defenses, (2) neither the Insurance Law nor the Superintendent's regulations expressly provide for such preclusion, and (3) the Legislature's prescribed penalties for overdue payments (statutory interest and attorney's fees) are exclusive remedies and impliedly exclude the more effective incentive and sanction of ultimate preclusion. We hold that an insurer may be precluded from interposing a statutory exclusion defense for failure to deny a claim within 30 days as required by Insurance Law § 5106 (a) and 11 NYCRR 65.15 (g) (3).
In a parallel universe and more general context, this Court has precluded insurers from disclaiming or denying liability after untimely notification of denials, related to liability coverage (see, Hartford Ins. Co. v County of Nassau, 46 N.Y.2d 1028, 1029 [applying preclusion remedy to former Insurance Law § 167 (8) (superseded by Insurance Law § 3420 [d])]; Allstate Ins. Co. v Gross, 27 N.Y.2d 263 [same]; see also, Zappone v Home Ins. Co., 55 N.Y.2d 131). Insurance Law § 3420 (d) provides that "[i]f under a liability policy delivered or issued in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant" (Insurance Law § 3420 [d] [emphasis added]).
Notably, though Insurance Law § 3420 (d) has some distinctive features from the present circumstances, it shares one very important attribute  it does not expressly authorize the preclusion remedy. As with 11 NYCRR 65.15 (g) (3) and Insurance Law § 5106 (a), the statute  Insurance Law § 3420 (d)  also is silent in that respect. In fact, Insurance Law § 3420 (d) does not require an insurer to disclaim coverage; rather, that statute only requires notice of intent to disclaim.
This Court, nevertheless, concluded that although "[i]ts literal language requires prompt notice of disclaimer after decision to do so * * * by logical and practical extension, there is imported the obligation to reach the decision to disclaim liability or deny coverage promptly too" (Allstate Ins. Co. v Gross, 27 N.Y.2d 263, 266, supra). In Allstate, the Court refused to allow the insurer to "seek[] shelter behind the words of the statute" (id.). Rather, it relied upon "the statutory plan to protect the injured parties and their alternative source of compensation," and "the risks unnecessarily delayed disclaimers *283 of liability or denials of coverage pose to each" (id., at 267-268 [emphasis added]). The Court, therefore, affirmed the lower court's preclusion remedy and declaration obligating the insurer to defend the insured on the basis of its untimely disclaimer (id., at 270; see also, Hartford Ins. Co. v County of Nassau, 46 N.Y.2d 1028, 1029, supra).
Zappone v Home Ins. Co. (55 N.Y.2d 131, supra) is similarly instructive and supportive. There, we noted that "[t]he purpose for which subdivision 8 of section 167 was enacted was to avoid prejudice to the insured, the injured claimant and the Motor Vehicle Accident Indemnity Corporation, each of whom could be harmed by delay in learning of the carrier's position" (id., at 137 [emphasis added], citing Allstate Ins. Co. v Gross, 27 N.Y.2d 263, 267, supra). In Zappone, the Court distinguished an insurer's denial of liability based upon a policy exclusion and a breach of a policy condition from an insurer's denial based on lack of coverage, such as where no contractual relationship exists with respect to the subject vehicle and incident (id., at 136-137). The Court concluded that the insurer was not subject to preclusion in the lack of coverage situation where "there never was any insurance in effect" (id., at 138; compare, Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 N.Y.2d 195 [decided today]). Zappone explained, however, that where "the policy covers the driver and the vehicle and the accident would be covered except for the specific policy exclusion," such as occurred here, "the carrier must deny coverage on the basis of the exclusion if it is not to mislead the insured and the injured person to their detriment" (Zappone v Home Ins. Co., supra, 55 NY2d, at 136 [emphasis added]).
We are persuaded that, until and unless the Legislature clearly declares otherwise, the preclusion analysis that we have employed in this other branch of the Insurance Law should also be discretely applicable with respect to the 30-day requirement in the no-fault context of the instant case. In fact, in addition to consistency and a fair, reasonable and logical policy fit, the no-fault situations also benefit from the availability of preclusion against insurers in situations such as the instant one.
The Legislature and the Superintendent surely did not intend to afford insurers greater rights in this particular respect with regard to no-fault insurance, nor do their enactments imply less interest in stimulating timely disclaimers and denials with regard to no-fault payments in such circumstances. The unavailability of preclusion, as urged by the carrier *284 and dissent, would materially frustrate the purposes and retard the goals of the speedy payment objective of the No-Fault Law. Those goals, a driving force behind both the no-fault and liability coverage insurance laws, focus on avoiding prejudice to insureds by providing for prompt payment or disclaimers of claims. We, therefore, refuse to carve out such an artificial demarcation between no-fault and liability coverage for these purposes with potentially even more confusing consequences than already exist (see, Nahmias v Merchants Mut. Ins. Co., 91 AD2d 680 [applying now-Insurance Law § 3420 in a no-fault context]; see also, Keith v Liberty Mut. Fire Ins. Co., 118 AD2d 151, 153, supra; Allstate Ins. Co. v Centennial Ins. Co., 187 AD2d 690, 691; Government Empl. Ins. Co. v Long Is. Coll. Hosp., 82 AD2d 797).
Moreover, Maryland's sweeping preclusion prohibition argument has been repelled with some frequency and consistency in the context of the very no-fault provisions at issue in the instant action  Insurance Law § 5106 (a) and 11 NYCRR 65.15 (g) (3) (see, Presbyterian Hosp. v Atlanta Cas. Co., 210 AD2d 210, 211; Loudermilk v Allstate Ins. Co., 178 AD2d 897, 898 [involving defense of intoxication exclusion]; Bennett v State Farm Ins. Co., 147 AD2d 779, 781 [same]). Emphatically, in Bennett, the Court concluded that "[a]lthough the statute does not expressly provide for the preclusion of the insurer from denying or disclaiming benefits because of such untimeliness and lack of diligence, the structure of the Insurance Law and implementing regulations compel the conclusion that preclusion is a proper remedy" (Bennett v State Farm Ins. Co., supra, 147 AD2d, at 781 [emphasis added]). Appellant insurer urges this Court to overturn these precedents in order to reach its desired reversal in the instant case. We are not persuaded to do so.
Finally, we must address Insurance Regulation 65.15 (g) (5), which expressly excludes preclusion as a remedy for an insurer's failure to comply with the 10-day notice requirement for statutory exclusions. That alone does not decide this case because it does not go far enough in considering all relevant provisions. In fact, we are satisfied that this provision impliedly recognizes the availability of the preclusion remedy under 11 NYCRR 65.15 (g) (3), since 11 NYCRR 65.15 (g) (5) is the only insurance regulation which expressly prohibits preclusion. The interpretive canon of inclusio unius, exclusio alterius helps us to conclude that had the Superintendent or Legislature intended to foreclose preclusion as a remedy in the 30-day time lapse circumstance under the no-fault intoxication regime, *285 they would have done so again  and certainly could have  expressly in order to avoid the anomalies and confusion that would otherwise ensue  as demonstrated in this very case. Analogously, we have noted that "[t]he failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended" (Pajak v Pajak, 56 N.Y.2d 394, 397).
Thus, we reject a blanket prohibition of the preclusion remedy as essentially frustrative of the purpose of the Insurance Law and the Superintendent's regulations. Insurers simply have no precedential or statutory recourse to sit on their many procedural rights and requirements and then belatedly deny claims they should have acted upon earlier. We emphasize that our holding here is keyed solely to the insurer's failure to comply with the 30-day notification requirement, set forth in Insurance Law § 5106 (a) and 11 NYCRR 65.15 (g) (3).
We also note our disagreement with the dissent's view regarding the exclusivity of the remedies made available under the statute and regulations. The theory goes too far and does not hold up. Both the statute and regulations provide for interest only with regard to "overdue payments" (see, Insurance Law § 5106 [a]; 11 NYCRR 65.15 [h]), and allow for attorney's fees only when a "valid claim" was denied or overdue (see, Insurance Law § 5106 [a]; 11 NYCRR 65.15 [i]). Therefore, untimely denials might suffer no sanction in situations where the insurer is not required to pay the claim and where the claim is ultimately deemed invalid. Consequently, the "remedies" provided by the statute and regulations are not plenary or exclusive and should not be deemed so by this Court exercising its interpretative authority. That is a matter for the Legislature to rule on expressly or more certainly.
No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits (see, Montgomery v Daniels, 38 N.Y.2d 41). That is part of the price paid to eliminate common-law contested lawsuits. Indeed, contrary to the insurer's assertions, preclusion of this type was an available remedy at common law, and if this important facet of the juridical rights and remedies among the various interested parties is to be deemed eliminated, it must be evident more plainly and expressly as this would be in derogation of a common-law protection. The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices.
*286 To string out belated and extra bites at the apple is, on the present state of the law, inherently contradictory and unfounded under the statutes, regulations and policies that pertain to and govern this dispute, and we should not countenance such practices on the state of this record and these regulations and statutes. If more harmony and clarity are to be achieved, we earnestly invite the Legislature to study and remedy the Rube-Goldberg-like maze. In the meantime, we discern no justification for penalizing injured parties or their provider assignees by recognizing disincentives against prompt attention and action for otherwise valid, first-party insurance payment claims.
In sum, Maryland was rightly precluded by the lower courts from raising an intoxication exclusion defense at this stage of this no-fault payment litigation, because it neither denied the claim within 30 days of receipt of the claim nor effectively extended the 30-day time requirement.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
WESLEY, J. (dissenting).
We agree with the majority's characterization of the statutes and regulations in question in this case as a "Rube-Goldberg-like maze", and we join in its request to the Legislature and Superintendent of Insurance to study and remedy the "thicket" of apparent contradictions and difficulties presented. Nevertheless, as best we can decipher the legislative intent and purpose of the current regulatory framework, preclusion should not be a remedy for an insurer's failure timely to deny a no-fault claim.
The majority finds preclusion to be consistent with the purposes of the Insurance Law. Yet the statute and regulations provide claimants with specific remedies for an insurer's untimely failure to pay a valid no-fault claim (Insurance Law § 5106 [a]; 11 NYCRR 65.15 [h], [i]). Instead of employing those remedies, the majority would adopt the remedy of preclusion that we crafted for the untimely failure to disclaim liability coverage under Insurance Law § 3420 (d) (see, Allstate Ins. Co. v Gross, 27 N.Y.2d 263). Employing preclusion as a remedy for the untimely processing of no-fault claims renders the existing sanctions insignificant.
As the majority recognizes, "[n]o-fault reform was enacted to provide prompt uncontested, first-party insurance benefits" (majority opn, at 285, citing Montgomery v Daniels, 38 N.Y.2d 41). To ensure promptness, the Superintendent of Insurance, in *287 accordance with section 5106 of the Insurance Law, promulgated regulations providing that a claim is overdue 30 days after the insurer receives verification of all relevant information (11 NYCRR 65.15 [g] [1] [i]), and providing for interest at 2% per month compounded (11 NYCRR 65.15 [h]), attorneys' fees and optional arbitration (11 NYCRR 65.15 [i]) to discourage insurers from letting claims languish. Such a system makes eminent sense when dozens of claims can be filed by different care providers in the same case, as was the case here.[1] If instead we impose a sanction of preclusion, then an insurer may be precluded from raising similar defenses to later claims from other health care providers if the insurer allows one claim to become overdue.
By comparison, in the context of an automobile liability policy covered by Insurance Law § 3420 (d), either the insured or an injured party notifies the insurer of the accident, and the insurer generally has one chance to disclaim liability. We agree with the majority that preclusion is not specifically authorized by section 3420 (d). Preclusion makes sense when it is limited to one set of facts (i.e., one accident) and a limited number of parties. We have noted that both the insured and those claiming injury from the insured's negligence have a right to know the carrier's coverage position (Allstate Ins. Co. v Gross, 27 N.Y.2d 263, 267-268, supra). Thus, preclusion guarantees everyone involved in a coverage question that it will be resolved in a timely and fair manner. In the liability insurance situation, where there are no other regulatory remedies to ensure a prompt disclaimer by the insurer, this Court devised the remedy of preclusion. The application of that remedy is not warranted a fortiori or otherwise in the context of the no-fault statute absent clearer guidance to that effect from the Legislature and the Superintendent of Insurance. To the contrary, in a January 18, 1989 letter, the Principal Examiner for the Insurance Department stated that it was the Department's position that the existence of "significant penalties" for untimely denials of no-fault claims differentiated them from untimely denials under other provisions of the Insurance Law, particularly article 34.
The no-fault statute is a creature of legislative fiat. It sought to ensure timely payments of medical bills (Montgomery v Daniels, 38 N.Y.2d 41, 51, supra). To that end, the Legislature *288 specifically included sanctions for the failure to pay timely a claim (Insurance Law § 5106 [a]).[2] Had the Legislature chosen to include preclusion within the available enforcement mechanism it provided for claimants (be they injured persons or care providers), it would have done so (see, Irving M. Etkind, M.D., P. C. v Allstate Ins. Co., 124 Misc 2d 779). The interpretive canon of expressio unius est exclusio alterius, applied by the majority in construing 11 NYCRR 65.15 (g) (5), applies with particular force in construing Insurance Law § 5106 (a): "when a statute creates a new right and specifies the remedy for the enforcement of such right, the remedy is generally exclusive" (McKinney's Cons Laws of NY, Book 1, Statutes § 240, at 413).
One of the purposes of the no-fault statute was to keep premiums low (Fafinski v Reliance Ins. Co., 65 N.Y.2d 990, 992). The majority's holding endangers that purpose, for it could result in insurers' having to pay claims that would otherwise not be covered. A policy shift such as this should be left to the Legislature that balanced the various competing concerns in creating this system that appears to have functioned well in providing benefits to those injured in automobile accidents.
The majority contends that preclusion is necessary because the sanctions available to claimants will be ineffective in situations where the insurer is not required to pay the underlying claim. We believe that an insurer is unlikely to rely on its own internal and unannounced determination that a claim should be denied. The carrier has substantial incentives to deny or approve the claim quickly. If the claim is a valid one, it accrues substantial interest after only 30 days following its submission. If the carrier is of a mind to deny the claim and is wrong, it will face similar penalties when its error is ultimately determined through arbitration or litigation.
In any event, if an insurer persists in its failure to deny a claim, even an invalid one, the insurer remains subject to penalties by the Insurance Department. As the Principal *289 Examiner for the Insurance Department noted in his January 18, 1989 letter, the regulations provide a framework which would enable the Department to levy administrative penalties. The regulations set forth time periods, violations of which can result in penalties under Insurance Law §§ 109 and 2601. We have held in other contexts that these Insurance Law provisions regulate the insurer's performance of its contractual obligations but do not give rise to a private cause of action (New York Univ. v Continental Ins. Co., 87 N.Y.2d 308, 317-318; Rocanova v Equitable Life Assur. Socy., 83 N.Y.2d 603, 614). No one has suggested that the majority's preclusion remedy must be employed because of an established failure of the Superintendent to enforce the regulations through these sections, or that these sections are ineffective in ensuring compliance by insurance carriers.
Moreover, as set forth today in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 N.Y.2d 195), the majority would preclude the insurer from raising any defense except lack of coverage. Such an approach is inconsistent with 11 NYCRR 65.15 (g) (5), which deals with lack of coverage and other defenses, or the statutory exclusions under Insurance Law § 5103 (b). In particular, Insurance Law § 5103 (b) (2) allows insurers to exclude from coverage a person injured "as a result of operating a motor vehicle while in an intoxicated condition" under Vehicle and Traffic Law § 1192. We have recognized that this statute reflects the legislative purposes of denying coverage for losses resulting from violations of the law and of keeping premiums low (Fafinski v Reliance Ins. Co., 65 N.Y.2d 990, 992, supra). The result today contravenes those legislative purposes, by creating coverage for an accident that appears to be alcohol related solely because of an insurer's lack of promptness. We see no need to go to such lengths when the statutes and regulations already provide sanctions for insurers that fail to act promptly.
The majority's view, and that of the Appellate Division, is premised on the "narrow basis" that the defendant failed to disclaim within 30 days after receiving the claim and further failed to request additional verification of the claim on prescribed forms. We agree with the majority's analysis of the applicable (and difficult) regulations involved. The carrier must pay or deny the claim within 30 days after proof of claim is received (11 NYCRR 65.15 [g] [3]). However, if a carrier has reason to believe that a claimant was operating a motor vehicle while in an intoxicated condition and that condition was a contributing cause of the accident, "the insurer shall be *290 entitled to all available information relating to the applicant's condition at the time of the accident" (11 NYCRR 65.15 [g] [7]). The proof of claim (the document that triggers the 30-day rule set forth in section 65.15 [g] [3]) is not complete until information that has been requested pursuant to paragraph (d) (1) or (2) of the subdivision has been furnished by the applicant or the authorized representative (plaintiff). Once the carrier determines that benefits are not payable because of the claimant's intoxication, it must notify the applicant within 10 business days (11 NYCRR 65.15 [g] [5]). As noted by the majority, a failure to meet this deadline (which is not measured for the receipt of a completed proof of claim) does not prevent invocation of the defense in an action (11 NYCRR 65.15 [g] [5]).
The majority points out that once the insurer had reason to believe that the insured's intoxication was a contributing cause to the accident, it had "to submit the prescribed verification forms to the appropriate parties [Presbyterian and Ms. DeGuisto] within 10 days after receipt of Presbyterian's completed application" (majority opn, at 280). Maryland's failure to utilize this procedure serves as the basis for the majority's preclusion decision since, according to the majority, Maryland can only extend the 30-day period (i.e., the proof of claim is not complete) through the use of the forms for more information.
The forms Maryland can use to seek verification are "prescribed" as noted by the majority. However, the forms do not include any questions that would provide information about whether Ms. DeGuisto was intoxicated on December 26, 1993 when she drove her vehicle into a utility pole (see, Appendix 13-A, 11 NYCRR 65.15, Forms N-F2, N-F4). Presbyterian rendered medical care to Ms. DeGuisto long after the accident. Maryland filed interrogatories in this action on October 13, 1994 and asked Presbyterian to provide any information it possessed concerning Ms. DeGuisto's blood-alcohol levels on the night of the accident. Presbyterian was unable to provide any information on this central and defining issue. Maryland thus was deprived of the benefit of a regulation that guarantees that it can delay its determination in this case until it has "all available information relating to the applicant's condition at the time of the accident" (11 NYCRR 65.15 [g] [7]).
As the majority points out, after Maryland reviewed the accident report and learned that Ms. DeGuisto had alcohol on her breath at the accident scene and that a blood-alcohol test was performed, Maryland requested the information from the *291 local police department on April 19, 1994 long before Presbyterian filed its claim. In late June 1994, Maryland's investigator again attempted to obtain the information. Apparently the accident was still under investigation by the District Attorney's office with regard to another person who may have provided alcohol to Ms. DeGuisto, who was underage at the time of the accident. Because the matter was still pending, the District Attorney refused to release the blood test results. Finally, the test results were released to Maryland's investigator (Ms. DeGuisto had a blood-alcohol level of 0.13% alcohol by weight) and Maryland notified Presbyterian the day after it received the information.
Maryland pursued the information it had to have from the only source that had it. Under the majority's analysis, however, Maryland is precluded from using this defense because it failed to use forms that don't allow Maryland to make the appropriate inquiries of a hospital that did not have the information. It is hard for us to understand how preclusion serves the goals of speedy payment when the statutory and regulatory framework on which it is now engrafted by this Court is fraught with ambiguities and inconsistencies.
Accordingly, we would reverse and deny plaintiff's motion for summary judgment.
Order affirmed, with costs.
NOTES
[1] From the time of the accident to late October 1994, the carrier had received 30 different claims for care rendered to Ms. DeGuisto.
[2] Of the 24 no-fault statutes in effect by 1977, 18 (including New York) required payment of claims within 30 days, and made insurers liable for interest and/or attorneys' fees on overdue payments; two other States had different time periods; one had no set time period, and three had no specific payments-due provision (Note, No-Fault Automobile Insurance: An Evaluative Survey, 30 Rutgers L Rev 909, 949, n 242). Three years after that statute was enacted in New York, there was an increase in the promptness of payment of benefits, from an average wait of 16 months prior to no-fault in New York, to an average wait of three months (id., at 952). It appears that the scheme devised by New York and other States is an effective one, without the need for an additional remedy of preclusion.