OPINION OF THE COURT
Bernice D. Siegal, J.
Plaintiff’s cross motion for summary judgment to recover unpaid no-fault benefits'” is disposed of as follows:
The relevant facts, as set forth in the court’s prior order and reiterated here, are as follows: Plaintiff rendered medical services to plaintiffs assignor on October 29, 2001 for injuries allegedly sustained in an automobile accident occurring on October 6, 2001. Plaintiff’s bill dated January 3, 2002 was received by defendant on January 9, 2002. By letter dated December 20, 2001 and mailed to the assignor Bienvenida, defendant required her to appear for an examination under oath (EUO) on January 15, 2002. When the assignor failed to appear on said date, defendant, by letter dated January 16, 2002 and mailed to Bienvenida and her attorney, rescheduled the EUO for January 23, 2002. Again, the assignor failed to appear for the rescheduled EUO. Subsequently, by an NF-10 issued on January 20, 2002, defendant denied the claim effective October 6, 2001, the date of the accident, “for failure to show for scheduled” EUO.
Defendant, in its opposition to the within cross motion, contends that the failure of plaintiffs assignor to appear for an EUO constitutes a material breach of the subject no-fault insurance policy precluding any recovery of benefits thereunder. Plaintiff, in its cross-moving papers, argues that the no-fault regulations controlling at the time of the instant claim did not provide for an EUO, that the assignor did not have a statutory duty to appear for the EUO and that, therefore, defendant cannot assert such failure to appear for the EUO as a defense to plaintiffs claim.
The court hereby grants plaintiffs cross motion for summary judgment on the following grounds: (1) the assignor under the *324 applicable regulations was under no duty to appear for an EUO; (2) an EUO is not the equivalent of a written proof of claim; (3) failure to appear twice for an EUO does not reach the level of “a pattern of noncooperation”; and (4) a breach of the liability endorsement of the insurance policy may not be construed as a breach of the no-fault endorsement.
Construction of Regulations
The proof of claim provisions under the regulations in existence at the time of the accident in question are devoid of any mention of an EUO. Rather, as both plaintiff and defendant make clear, the injured person or someone on their behalf shall “execute written proof of claim under oath.” Notably, the omission of an EUO as a requirement for a proof of claim if requested by the insurer is made even more striking by the inclusion of a requirement for an independent medical examination. The relevant regulations in effect at the time of the purported accident are as follows:
“mandatory personal injury protection endorsement (New York) . . .
“Proof of Claim; Medical, Work Loss, and Other Necessary Expenses . . . Upon request by the Company the eligible injured person or that person’s representative shall:
“(a) execute a written proof of claim under oath;
“(b) provide authorization that will enable the Company to obtain medical records; and
“(c) provide any other pertinent information that may assist the Company in determining the amount due and payable.
“The eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, the Company, when, and as often as, the Company may reasonably require.” (11 NYCRR 65.12 [e] [eff Aug. 15, 1995].)
Amendments to these regulations were promulgated which substantially changed an injured party’s obligations, to wit, a new subpart 65-1 was added to make clear the requirements for endorsements. The prescribed policy endorsement, section I, Conditions, provides:
“Proof of Claim. Medical, Work Loss, and Other Necessary expenses . . . Upon request by the Company, the eligible injured person or that person’s assignee or representative shall:
“(a) execute a written proof of claim under oath;
*325 “(b) as may reasonably be required submit to examination under oath by any person named by the Company and subscribe same;
“(c) provide authorization that will enable the Company to obtain medical records; and
“(d) provide any other pertinent information that may assist the Company in determining the amount due and payable.
“The eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, the Company when, and as often as, the Company may reasonably require.” (11 NYCRR 65.1-1 [d] [the underscoring added above denotes new material “filed Aug. 2, 2001, eff Sept. 1, 2001. Effectiveness stayed Aug. 29, 2001; stay overruled Apr. 4, 2002. Part effective Apr. 5, 2002” (regulations implementing the Comprehensive Motor Vehicle Insurance Reparations Act subparts 65-1 — 65-4 [11 NYCRR 65-1 — 65-4, Historical Note])].)
Further, with respect to the claims procedure, section 65.15 (g) of the New York State No-Fault Insurance Regulations in effect during the relevant time period provides, in applicable part, as follows:
“(1) (i) No-fault benefits are overdue if not paid within 30 calendar days after the insurer receives verification of all the relevant information requested pursuant to subdivision (d) . . . In the case of a medical examination, the verification is deemed to have been received ... on the day the examination was performed.” (11 NYCRR 65.15 [g].)
Section 65.15 (d) (3) states that “If the additional verification required by the insurer is a medical examination, the insurer shall schedule the examination to be held within 30 calendar days from the date of receipt of the prescribed verification forms.” Notably absent is any reference to an “examination under oath.”
In contrast, the amended regulations specifically include a provision for an “examination under oath,” set forth in 11 NYCRR 65-3.8 (a) (1) and 65-3.5 (d), respectively. As cited above, while the latter regulatory provisions were initially to go into effect on September 1, 2001 — prior to the dates of services allegedly rendered by plaintiff and the date of plaintiff’s claim, the effective date was subsequently stayed to April 5, 2002— after the relevant period in question in the present matter.
*326 Consequently, in the case at bar, the assignor is not subject to the express provision requiring her submission to an EUO if requested by the insurer and, therefore, participation in an EUO is not a condition precedent to the payment of a claim under New York State’s No-Fault Law. (See Bronx Med. Servs. v Lumbermans Mut. Cas. Co., 2003 NY Slip Op 51022[U] [App Term, 1st Dept].)
Written Proof of Claim
Defendant’s argument that an EUO may be deemed the equivalent of the “written proof of claim” which an insurer may require from an allegedly injured person as a condition precedent under 11 NYCRR 65.12 (e), Mandatory Personal Injury Protection Endorsement § I (Conditions [a]) is unconvincing. Defendant has not sufficiently demonstrated any legal basis to convince the court that “written proof of claim” can mean other than the clear meaning of its words, which the court finds does not encompass an examination under oath. Moreover, a finding that an EUO is the functional equivalent of a written proof of claim would render the amended regulations meaningless with respect to EUOs. Clearly, an examination under oath is a discovery tool quite different from a “written proof of claim,” which was provided for in the regulations then effective and in the amended regulations.
Accordingly, the court finds that the assignor and, by extension, plaintiff assignee, had no statutory or regulatory duty under no-fault law to appear for the EUO.
Breach of Insurance Policy
As the court finds that the denial was timely, the single remaining issue is whether the assignor’s failure to appear for the EUO constituted a breach of the insurance policy and, if so, whether such breach barred plaintiff from any recovery of no-fault benefits for services rendered to the assignor.
A review of part E of the defendant’s policy clearly shows that the insured has an obligation to appear for an examination under oath if requested by the insurer and that the insurer “has no duty to provide coverage” under the policy unless there is compliance. However, it is well settled that recovery under a policy will be precluded upon a willful failure to submit to an EUO constituting a material breach of the policy, requiring “a showing that the insured’s attitude ‘ “was one of willful and avowed obstruction” ’ involving a ‘pattern of noncooperation for *327 which no reasonable excuse [is] offered’ (Argento v Aetna Cas. & Sur. Co., 184 AD2d 487, 488 [1992]).” (Ingarra v General Acc./PG Ins. Co. of N.Y., 273 AD2d 766, 767-768 [2003] [citations omitted]) or “where the failure to cooperate is persistent” (Levy v Chubb Ins., 240 AD2d 336, 337 [1997]; see also Johnson v Allstate Ins. Co., 197 AD2d 672 [1993]). In the matter at bar, there is no question that the assignor’s failure twice to appear for an EUO does not constitute such a pattern of willful and persistent noncooperation as to be considered a material breach of the insurance policy barring recovery of the no-fault claim.
However, even assuming, arguendo, the assignor’s failure to appear for the EUO was willful, the defendant has failed to demonstrate that part E constituted the no-fault part of the policy, rather than the liability portion. “ ‘ “The coverage provided for in the [no-fault] endorsement cannot be qualified by the inapplicable conditions ... of the liability portion of the policy” ’ ” (Utica Mut. Ins. Co. v Timms, 293 AD2d 669, 670 [2002]). Moreover, defendant is precluded from asserting the affirmative defense of lack of medical necessity in the absence of any reference to same in either of the denials (cf., Presbyterian Hosp. v Maryland Cas. Co., 90 NY2d 274 [1997]).
Accordingly, the plaintiffs cross motion for summary judgment is granted.

 The defendant withdrew its motion for reargument of its motion for dismissal and the court’s decision and order dated March 19, 2003 denying such motion.