OPINION OF THE COURT
Timothy J. Dufficy, J.
During this jury trial to recover $950 in first-party no-fault benefits for medical services rendered to its assignor, plaintiff *644 moved for a directed verdict. The only issue at trial was whether the services rendered were medically necessary as defined by Insurance Law § 5102 (a) (1). Plaintiffs’ motion for a directed verdict is granted because plaintiff made out a prima facie case and defendant failed to present admissible evidence to disprove medical necessity.
Plaintiff claims that biofeedback treatment[1] for lower back pain and chronic pain syndrome was a medically necessary treatment. Once a plaintiff demonstrates that it has submitted proper proof of claim to defendant and defendant did not pay or deny within the statutory 30-day period, plaintiff has established a prima facie case. (See, Insurance Law § 5106 [a]; Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists]; Ocean Diagnostic Imaging v Nationwide Mut. Ins. Co., 2 Misc 3d 1009[A], 2004 NY Slip Op 50203[U] [App Term, 2d & 11th Jud Dists].)
The burden rests on defendant to prove that the biofeedback treatment was not medically necessary. (See, Choicenet Chiropractic P.C. v Allstate Ins. Co., 2003 NY Slip Op 50672[U] [App Term, 2d & 11th Jud Dists]; A.B. Med. Servs. v GEICO Ins., 2 Misc 3d 26 [App Term, 2d Dept 2003].)
In the case at bar, it is undisputed that the defendant is an insurance company licensed to do business in the State of New York; plaintiff, pursuant to the New York State No-Fault Law, submitted a bill and claim for payment in the amount of $950; and payment of said claim was timely denied. Plaintiff demands judgment against defendant in the amount of $950 with interest, attorney’s fees, costs and disbursements.
Plaintiffs Case
Plaintiff called Tatinan Rabinovich as a witness. Ms. Rabinovich testified that she was employed by Queens Blvd. Medical, *645 P.C. and that she is the custodian of the medical and billing records. The witness further testified that she received the bills directly from the treating doctor and is responsible for submitting bills to insurance companies for payment and that she was familiar with the bill that defendant denied payment of. Plaintiff moved into evidence the bill in question, the assignment form, the treating physician reports and denial of said claim.
Plaintiff established through the expert testimony of Dr. Michael Walsh, a board-certified neurologist, that the biofeedback services rendered were appropriate. Dr. Walsh testified that, based upon a review of plaintiffs subjective complaints and his review of the objective findings during the physical examination, the injury is severe and chronic. In his expert opinion, Dr. Walsh found to a medical certainty that biofeedback is a good modality for treatment of a back injury and chronic pain, due to the following factors: age and physical condition of the patient (diabetic, renal failure and hypertension). He also found biofeedback was medically appropriate treatment, since it would limit the amount of prescription medication which could lead to addiction and could adversely affect the patient’s general health.
Plaintiff established a prima facie case, plaintiff demonstrated proper proof of claim to defendant and defendant denied payment within the statutory period. (Insurance Law § 5106 [a]; Amaze Med. Supply v Eagle Ins Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists].)
Motion In Limine
At the commencement of the trial, plaintiff made a motion to preclude the testimony of defendant’s expert witness.[2] Plaintiff claimed the witness was not competent to testify to the use of medical biofeedback in relation to a back injury. The court reserved opinion, pending completion of plaintiffs case. After plaintiff completed the case-in-chief, the court held a hearing outside the presence of the jury. The issue at the hearing was whether defendant’s expert is competent to testify as an expert in the case at bar. On this issue defendant offered Dr. Andrew *646 Elmore’s testimony as an offer of proof. The court also reviewed Dr. Elmore’s report, which stated he performed a “psychological file review.” He further states that there is no evidence of “functionally disabling cognitive or emotional sequelae and no recommendation or referral for psychological evaluation.” He goes on to note that this bill was not accbmpanied by “a detailed clinical psychological examination report to establish the basis for the provision of biofeedback treatment in this case.”
The witness testified that he received a doctorate in psychology more than 25 years ago. The witness further testified that he participated in thousands of patients’ care in the area of biofeedback in relation to migraine headaches, irritable bowel syndrome and dental phobia. Dr. Elmore only treated medical conditions in conjunction with treating physicians who made the ultimate decisions to refer the patient to him for biofeedback. Dr. Elmore admitted to the court that he has never treated back pain, nor does he have any expertise in the use of biofeedback in treating back pain or chronic pain syndrome and was not competent to testify as to the use - of biofeedback in such treatment. Dr. Elmore stated he did not know the protocols required for physician treatment of spinal or back injuries and was unaware of the use of biofeedback for back, neck or chronic pain syndrome for lower back.
The court finds Dr. Elmore’s testimony to be credible. However, since Dr. Elmore lacked expertise in the effectiveness or ineffectiveness of biofeedback treatment for back pain and chronic pain syndrome, the court holds that Dr. Elmore could not give an opinion on the issue in the case at bar and thus is not competent to testify as an expert. (See, Abraham, v Countrywide Ins. Co., 3 Misc 3d 130[A], 2004 ;NY Slip Op 50388[U].) “[Ejxpert opinion is proper when it would help to clarify an issue calling for professional or technical knowledge.” (See, De Long v County of Erie, 60 NY2d 296, 307 [1983].) Dr. Elmore did not know the protocols required fori physician treatment of spinal or back injuries and was unaware of the use of biofeedback for back, neck or chronic pain syndrome. His testimony could not help to clarify the issues in this trial and his testimony would not be helpful to the jury or the Cjourt.
Defendant’s Case
Upon completion of the hearing, the defendant failed to call any witnesses or offer any proof that the medical services were unnecessary. During the trial defendant alleged fraud, chai *647 lenged the sufficiency of the assignment, alleged that the treatment was never performed and argued that the wrong CPT codes[3] were used. The court ruled that such issues were waived because defendant failed to raise said allegations in the denial of claim. (See, Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274 [1997].)
Since the burden rests on defendant to prove that the services rendered were not medically necessary and defendant did not present any proof, the court granted plaintiffs motion for a directed verdict and awarded judgment for the plaintiff in the amount of $950 together with statutory costs, interest and attorney’s fees.

. Biofeedback (also called applied psychophysiology) is a method through which people are trained to improve their health or performance by using physiological signals from their own body. These signals (for instance respiration, heart rate, muscle tension or brain activity) are made visible/audible on a computer and used to help a person become more aware of what goes on inside their body (Stedman’s Medical Dictionary 204 [26th ed 2003]). Biofeedback is a recognized treatment and is listed under a number of current procedural terminology (CPT) codes. Administration of biofeedback is limited to qualified physicians. Biofeedback may be administered in neuromuscular reduction as a result of neurological damage or as a result of spinal cord injury. Biofeedback may also be used to treat inflammatory and/or musculoskeletal disorders causally related to the accepted condition. When properly administered fees are paid to treating physicians pursuant to the workers’ compensation fee schedule in no-fault cases.

. There are two kinds of expert testimony. They are factual expert testimony and expert opinion. The distinction between these two kinds of testimony is that, in the former instance, the facts are to be stated by the experts and the conclusions to be drawn by the jury; in the latter, the expert states the facts and gives his or her conclusions in the form of an opinion or guidance to the jury. (See, 58A NY Jur 2d, Evidence and Witnesses § 640.) In the case before the court the defendant’s expert was not competent to testify as a factual expert or give expert opinion.

. The American Medical Association established “current procedural terminology” codes to be used as a fee schedule. The figures used are adjusted geographically based on city and state input (CPT Codes and Descriptions, American Medical Association [2000]).