*238 OPINION OF THE COURT
Bernice D. Siegal, J.
Background.
The plaintiff, a health care provider, brought the within action, by service of a summons and complaint upon defendant insurer on August 16, 2002 to recover for services rendered under no-fault, to Albert Mullakandov, Alik Mullakandov and Djabrail Moukhtarov, relating to injuries allegedly arising out of a motor vehicle accident in which Albert and Alik were passengers in an automobile owned and operated by policyholder Djabrail and occurring on October 12, 2001.
Trial of this action was commenced in this part on December 6, 2005 and was continued through December 8, 2005, with the parties stipulating, with respect to plaintiff’s case, as to the submission by plaintiff to defendant of the underlying NF-3 proofs of claim, the execution of the assignments of benefits from Albert and Alik to plaintiff on November 12, 2001 and December 3, 2001; and as to defendant, the timely issuance by defendant of its NF-10 denials. After plaintiff rested and in the course of defendant’s case-in-chief, defendant sought to introduce into evidence certified transcripts of the examinations under oath (EUOs) of Albert and Alik taken on November 5, 2002. Plaintiff’s counsel objected to their admission and the trial was adjourned to December 22, 2005 for the submission of legal memoranda and for oral argument before the court.
On the latter date, plaintiffs counsel argued, regarding the admission into evidence of the EUOs, that the assignors/ deponents were nonparties and that the requirements for the admissibility of nonparty depositions, as provided by CPLR 3117 (a) (3), have not been met in this case and further, in any event, under long-standing case law (the “New York rule”), the declarations of an assignor, whether made before or after the assignment, are inadmissible as against the assignee. Defense counsel, in response, argued that the plaintiff, as assignee, is bound by the statements of its assignors, that the EUO transcripts, properly certified, are akin to certified examination before trial (EBT) transcripts and may be used at trial and in the same manner as provided under CPLR 3117. The court reserved decision thereon and further adjourned the case for trial.
The primary issue, therefore, presented to this court for its adjudication in the matter at bar is: Whether defendant is *239 precluded, by operation of either the “New York rule” or the provisions of CPLR 3117 governing the admissibility of nonparty depositions.
Findings of Law
At the outset, as the EUOs of the two particular above-mentioned nonpolicyholder/assignors were taken in November 2002, after both the execution of the assignments in November and December of the preceding year and also three months after the institution of the within action, the court’s application of any and all relevant statutory and/or case law are necessarily limited to the facts of this case.
The so-called “New York rule” is a venerable doctrine, its antecedents going back to the middle of the nineteenth century, to wit, Paige v Cagwin (7 Hill 361 [NY Sup Ct 1843]), and long before the advent of our State’s no-fault insurance statutes and regulations. One of the very few decisions directly on point is the recent one of Judge Baily-Schiffman in JSI Expert Serv. v Liberty Mut. Ins. Co. (7 Misc 3d 1009[A], 2005 NY Slip Op 50513[U], *3-4 [Civ Ct, Kings County 2005]), wherein she discussed the New York rule and its application to the admissibility of the EUOs of plaintiffs assignors, quoting Prince, Richardson on Evidence § 8-242 (Farrell 11th ed) as follows:
“ Tn New York declarations of a vendor or assignor of a chattel or chose in action, whether made before or after the transfer, are inadmissible to affect the claim or title of a subsequent transferee for value’
“This rule stems from the decision in Paige v Cagwin . . . Except where the statements were made by the real party in interest, such as a decedent, the New York doctrine will apply and the statements of the former . . . assignor will not be admissible to affect . . . the claim of the subsequent ... assignee.” (See also Prince, Richardson on Evidence § 8-243 [Farrell 11th ed].)
Pursuant to this doctrine, Judge Baily-Schiffman reversed her previous trial ruling permitting the admission of testimony as to the assignors’ EUO statements (which defendant insurer had sought to introduce as admissions probative of its affirmative defense that the underlying accident was “staged”), and ordered that such testimony be stricken.
As stated in Richardson § 8-243 (at 550-551), the doctrine first enunciated in Paige (supra) “is inapplicable when the *240 admissions of a former owner of personal property are offered against a person who claims through representation, such as an executor, administrator, heir or trustee in bankruptcy. The former owner’s admissions are receivable against such a person.” In the case at bar, the court finds that plaintiff assignee has not brought the action in the capacity as the representative of the aforementioned assignors (e.g., as executor, administrator or other such capacity referred to in section 8-243). Thus, the above exception to the New York rule is not applicable here.
Plaintiff has also cited several cases in support of its contention that an assignor is a nonparty rather them a real party-in-interest, among them Inwood Hill Med., P.C. v General Assur. Co. (10 Misc 3d 18 [App Term, 1st Dept 2005]), and the court finds that the assignors cannot be considered as real parties-in-interest.
Defendant countered with authority the court finds inapposite to the case at bar. In Dlugosz v Exchange Mut. Ins. Co. (176 AD2d 1011, 1012 [3d Dept 1991]), the transcripts of the EUOs of the plaintiff and her husband were held to be admissible as containing “statements of a party to the lawsuit and as extrajudicial admissions of a party.” However, the court finds significant that the deponent husband was also an extra insured under the subject policy and, therefore, it is clear to this court that he was a party united in interest. Another action which this court finds distinguishable involves a homeowner’s insurance policy in which defendant insurer asserted an arson defense (Kamenov v Northern Assur. Co. of Am., 259 AD2d 958 [4th Dept 1999]). There, the Court held that the trial court had erred in precluding the admission into evidence of portions of the EUO testimony of plaintiffs husband as to the insurance claim. However, in that matter, the husband was also found to be the plaintiffs agent. Therefore, unlike the case law relied upon by the defense, the court finds that the assignors herein are neither in privity with plaintiff, nor otherwise real parties-in-interest. Nor can the plaintiff assignee here be found in any manner to have brought the instant action in a representative capacity.
Nonetheless, this court is also cognizant of the long-established principle, asserted by defendant herein, that an “assignee stands in the shoes of the assignor and takes the assignment subject to any preexisting liabilities” (Arena Constr. Co. v Sackaris & Sons, 282 AD2d 489, 489 [2d Dept 2001]). That general principle remains alive and well today in no-fault actions, *241 albeit modified and refined by the limited nature of no-fault claims assignments and by operation of New York State’s Insurance Law and no-fault regulations promulgated thereunder. (See A & S Med. v Allstate Ins. Co., 196 Misc 2d 322 [App Term, 1st Dept 2003], affd 15 AD3d 170 [1st Dept 2005].) Further, a thorough reading of the “forefather” of the New York rule (Paige v Cagwin, supra) reveals that the rationale for the court’s decision was primarily an evidentiary determination that the proffered evidence in that case — out-of-court statements made by a third party offered against the plaintiff endorsee of a promissory note — was inadmissible hearsay. Specifically, the court there stated:
“[T]he note ... is subject to the same defence in the hands of the endorsee as when it was in the hands of the endorser; but it by no means follows that the mere declarations of such endorser can affect the rights of the endorsee. The means of proving a defence may be affected, but the right to make it is not impaired. The defence still exists; but it must be established by testimony and not by mere declarations.” (7 Hill at 379-380.)
This court finds it also significant that Paige v Cagwin, though finding such statement to be inadmissible hearsay as it was proffered by a third party, does not preclude a defense, so long as it may be proven by other than inadmissible out-of-court declarations. Therefore, as applicable to no-fault actions, while it is well established that the statements made by an assignor (though a nonparty) in an EUO may be offered by a defendant insurer against a provider/assignee to prove a lack of coverage defense (see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195 [1997]) in opposition to a summary judgment motion* despite being hearsay (see Bond v Giebel, 14 AD3d 849 [3d Dept 2005]; Kwi Bong Yi v JNJ Supply Corp., 274 AD2d 453 [2d Dept 2000]), EUO statements are nonetheless hearsay. As such, such statements are inadmissible at trial unless, for example, they are used for impeachment purposes upon cross-examination in the event such declarant/assignor testifies.
However, even assuming arguendo that this court would have held that the “New York rule” does not apply to the case at bar, *242 the court finds, for the reasons discussed below, that the result must be the same. The applicable no-fault regulations provide that “upon request by the Company [i.e., the insurer], the eligible injured person or that person’s assignee or representative shall: ... as may reasonably be required submit to examinations under oath by any person named by the Company and subscribe same” (11 NYCRR 65-1.1 [d] [Conditions] [Proof of Claim. Medical, Work Loss, and Other Necessary Expenses]).
However, the no-fault regulations offer little, if any, guidance pursuing a defense through litigation. As was stated by our state Court of Appeals, “If more harmony and clarity are to be achieved, we earnestly invite the Legislature to study and remedy the Ruhe-Goldberg-like maze” (Presbyterian Hosp. in City of NY. v Maryland Cas. Co., 90 NY2d 274, 286 [1997]). The experience in the trial courts attempting to reconcile the rules of evidence and civil practice with regulations promulgated which are more suited to arbitration should now be a sufficient signal to the Legislature that some action on its part is required. This is particularly true given the avalanche of no-fault litigation threatening to crush the court system, which is the exact opposite of the purposes of New York’s No-Fault Insurance Law, to wit: “to remove the vast majority of claims arising from vehicular accidents from the sphere of common-law tort litigation, and to establish a quick, sure and efficient system for obtaining compensation for economic loss suffered as a result of such accidents” (Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211, 214 [1996]), while “still allowing] carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices” (Presbyterian Hosp. v Maryland Cas., supra at 285).
Moreover, it is not insignificant that in the instant case the EUOs were requested and held after the within action had been commenced. The use of EUOs is a device utilized for verification of proof of claim, in accordance with the regulations in effect as of April 5, 2002, such verification to be requested in accordance with strict guidelines (11 NYCRR subpart 65-3). It is noteworthy, however, that compliance with a request for an EUO was not mandated under the regulations in effect during the claim process herein. Additionally, the provisions in effect under the “new” regulations, with respect to the use of EUOs, lack the protections found in article 31 of the CPLR governing the use of EBTs (e.g., subpoena of a nonparty witness with such *243 subpoena served upon the adversary — CPLR 3106 [b]). It is clear to the court that defendant’s use of EUOs was improper, as it could not be considered as a device for verification of proof of claim, as permitted under the regulations not yet in effect when the underlying claim arose; and, secondly, even if viewed as allowable under 11 NYCRR 65-1.1 (d), as the kind of “red-tape dilatory” practice referred to in Presbyterian (supra at 285), in light of its use some three years after the submission of the underlying claims. As the defendant here chose to forgo the use of EBTs and rather opted (and improperly so) to utilize EUOs, it appears that a conscious effort was made to circumvent the CPLR.
Therefore, although an EUO can be used as a shield by an insurer against payment of a no-fault claim where an assignor has failed to comply with a properly noticed EUO request, given the strictures of New York rules of evidence, this court reaches the opposite conclusion when seeking to admit an EUO transcript into evidence at trial.
Accordingly, the court finds that the defendant is precluded from introducing into evidence at trial and to the extent set forth above the EUO testimony of the assignors, Albert Mullakandov and Alik Mullakandov, as against the plaintiff.

 The court finds, parenthetically, that such EUO transcripts may be admissible in opposition to a motion for summary judgment (see A.B. Med. Servs. PLLC v Prudential Prop. & Cas. Ins. Co., 7 Misc 3d 14 [App Term, 2d Dept 2005]; see also Chin v Ademaj, 188 AD2d 579 [2d Dept 1992]; Ratut v Singh, 186 Misc 2d 350 [Civ Ct, Kings County 2000]).