OPINION OF THE COURT
Augustus C. Agate, J.
Plaintiff All Health Medical Care, P.C. brought suit to recover compensation under the No-Fault Law for medical services it provided to its assignor Eliyahu Malaev, an insured of defendant Government Employees Insurance Company. A trial was *908 held before the court on October 31, 2003 and December 16, 2003. Plaintiff argued that it presented a timely and proper notice of claim which defendant failed to pay or deny. Defendant argued that it had no duty to pay or deny plaintiff’s claim because plaintiff failed to comply with defendant’s verification requests. For the foregoing reasons, the court finds in favor of plaintiff.
The facts adduced at trial were largely undisputed. Plaintiff submitted evidence of a prima facie case through defendant’s insurance adjuster, who admitted receipt of plaintiffs claim on May 23, 2001. Defendant then issued a verification request on May 30, 2001 asking for specific information regarding the services provided. When plaintiff failed to respond to its initial verification request, defendant submitted a follow-up request for verification on June 29, 2001. On July 30, 2001, defendant sent a letter to plaintiff “closing” the matter, stating plaintiff failed to respond to defendant’s verification requests. However, on September 29, 2001, defendant received a response from plaintiff, including plaintiffs sign-in sheets and acupuncture points. Defendant’s insurance adjuster testified that she found this response to be insufficient, as it did not provide plaintiffs office notes, doctor’s re-exam narrative or information regarding acupuncture needles. Therefore, she inserted plaintiffs response in the relevant file and took no further action. Upon receiving no denial or payment from defendant, plaintiff commenced this action.
The sole issue at trial was whether defendant had any duty to act after receiving plaintiffs response to defendant’s verification requests. Defendant contends that it did not have to pay or deny plaintiffs claim because plaintiff failed to comply with its timely verification requests. Defendant argues that it requested specific information regarding the acupuncture services plaintiff performed and that plaintiffs response was late and insufficient. As plaintiff did not sufficiently comply with defendant’s verification request, defendant’s time to pay or deny plaintiffs claim is not overdue and plaintiff is not entitled to compensation.
Plaintiff contends that defendant must pay its claim due to defendant’s failure to act after receiving plaintiff’s response. Plaintiff argues that it did provide a sufficient response to defendant’s verification request, and that it has no time frame under the no-fault regulations upon which to submit its response. Plaintiff further argues that while defendant did not have to issue a denial while the verification request was pend *909 ing, once plaintiff submitted a response, defendant had a duty to either pay, deny or request further verification. Since defendant failed to act, it is precluded from presenting any defenses to plaintiffs claim.
The court holds that defendant was derelict in failing to act upon receipt of plaintiffs response to defendant’s verification request, and therefore plaintiff is entitled to payment. As long as plaintiffs documentation is arguably responsive to defendant’s verification request, defendant must act within 30 days of receipt of plaintiffs response, or will be precluded from presenting any noncoverage affirmative defenses. While the law is clear that defendant’s time to pay or deny is tolled pending receipt of some form of verification, once it has received verification, its time is no longer tolled and it has a duty to act. There is nothing in the no-fault regulations or case law that allows defendant to remain silent in the face of plaintiffs response to its verification request. Defendant’s position defies the spirit and purpose of the No-Fault Law in promoting prompt resolution of matters. It is also inconsistent with the purpose behind verification requests in allowing defendant to investigate a claim and plaintiff the opportunity to fix any inadequacies in its claim. Further, since the no-fault regulations state that defendant should not issue a denial while a verification request is pending, defendant’s silence served to unfairly prejudice plaintiff by allowing the matter to remain in limbo because defendant found plaintiff’s good faith response insufficient. Defendant had numerous choices it could have made after receiving plaintiffs response that would have preserved its right to challenge plaintiffs claim. However, as defendant did nothing, its inaction constitutes a waiver of its defenses.
Under the no-fault regulations, an insurance company has 30 days from the date of receipt to either pay or deny a claim. (11 NYCRR 65.15 [g].) This time may be extended if the insurance company sends a verification request to the claimant within 10 days from the date of receipt of the claim. (11 NYCRR 65.15 [d] [1].) If the claimant does not respond to the insurance company’s request, the insurance company must send a follow-up request for verification to the claimant within 10 days of the claimant’s failure to respond. (11 NYCRR 65.15 [e] [2].) During this period, the insurance company’s time to pay or deny is tolled pending receipt of the requested information. Further, the insurance company shall not issue a denial until all requested verification is received. (11 NYCRR 65.15 [g] [1] [I].) Once the verification *910 is received, then the insurance company has 30 days to pay or deny the claim. Failure to pay or deny a claim will result in preclusion of defendant’s affirmative defenses at trial. (See Presbyterian Hosp. v Maryland, 90 NY2d 274 [1997]; Mount Sinai Hosp. v Triboro Coach, 263 AD2d 11 [2d Dept 1999].)
However, the regulations are silent as to what, if anything, the insurance company must do if it receives insufficient verification. The case law is also devoid of any obligation the insurance company has upon receipt of information it deems insufficient. Based upon the purpose of the No-Fault Law and controlling case law, though, it seems clear that the insurance company must affirmatively act once it receives a response to its verification requests.
The purpose of the no-fault statute is to ensure prompt payment of claims by accident victims. (Presbyterian v Maryland, 90 NY2d at 284; Dermatossian v New York City Tr. Auth., 67 NY2d 219 [1986]; Zydyk v New York City Tr. Auth., 151 AD2d 745 [2d Dept 1989].) In ensuring that legitimate accident victims receive swift compensation, the regulations are strictly construed and insurance companies have strict guidelines upon which they can act. (See Presbyterian Hosp. v Aetna Cas. & Sur. Co., 233 AD2d 431 [2d Dept 1996], lv denied 90 NY2d 802 [1997].) An important aspect of that is allowing insurance companies to conduct investigations in order to determine the veracity and propriety of submitted claims. This can be furthered by requests for verification, which provide insurance companies with the opportunity to investigate and pay legitimate claims expeditiously. However, so as not to undermine the goals of prompt payment, insurance companies must issue these verification requests in accordance with the strict time requirements of the no-fault regulations. Further, to allow claimants the opportunity to rectify any deficiencies in their claims, insurance companies shall not issue denials while verification requests are pending. (See Boro Med. & Psych Treatment Servs., P.C. v Country Wide Ins. Co., 2002 NY Slip Op 50538[U] [App Term, 2d & 11th Jud Dists 2002].) This rule prevents prejudice to claimants, who otherwise might have legitimate claims denied for minor defects, and ensures insurance companies receive all relevant information necessary to pay or deny a claim.
As it is incumbent upon plaintiff to comply with all proper verification requests made by defendant in order to receive payment, it is equally incumbent upon defendant to expedite the processing of the claim. There is no provision of the no-fault *911 regulations or case law that allows an insurance company to remain silent in the face of a legitimate, albeit insufficient, verification response. It is inconsistent with the goals of the No-Fault Law in encouraging swift payment of claims to allow an insurance company to ignore a response to its verification request merely because it believes the response to be inadequate. In Westchester County Med. Ctr. v New York Cent. Mut. Fire Ins. Co. (262 AD2d 553 [2d Dept 1999]), the Appellate Division, Second Department, admonished a plaintiff who failed to respond to a defendant’s verification request because it deemed the request to be “unintelligible.” The Court found that whether or not the request was confusing, it was clearly a verification request that plaintiff could not ignore without placing itself in peril. (See id. at 555.)
The present scenario is analogous to the facts of Westchester County Med., in that defendant did nothing because it believed plaintiffs response to be incomplete. Based upon the Court’s decision, neither party may ignore communications from the other without risking its chance to prevail in the matter. (See id.) In this case, regardless of whether plaintiff fully responded to defendant’s claim, it was clear that the information plaintiff provided was in response to defendant’s request, and therefore defendant could not sit idly by and ignore it. By doing so, defendant placed itself in jeopardy by waiving its defenses to plaintiffs claim. (See Presbyterian v Maryland, 90 NY2d at 280; Dermatossian, 67 NY2d at 225.)
Allowing defendant to do nothing in the face of a response to its verification request is overly prejudicial to plaintiff. If defendant cannot issue a denial because its verification request is outstanding, and defendant does not have to act upon receiving information from plaintiff, then defendant could allow a claim to be delayed indefinitely, while plaintiff believes it properly responded to defendant’s request. (See Atlantis Med., P.C. v Liberty Mut. Ins. Co., 2002 NY Slip Op 40043[U] [Nassau Dist Ct 2002].) By allowing defendant to do nothing, the court would be assisting defendant in thwarting the very purpose of the No-Fault Law in ensuring swift resolution of claims. That purpose is clearly undermined by defendant’s failure to act on an otherwise legitimate claim. (See Metro Med. Diagnostics v Lumbermens Ins. Co., 189 Misc 2d 597, 598 [App Term 2001].) Further, it is overly prejudicial to claimants, who can only bring actions against insurance companies once there has been a determination that the claim is overdue. (See Westchester Med. *912 Ctr. v Travelers Prop. & Cas. Ins. Co., 2001 NY Slip Op 50082[U] [Sup Ct, Nassau County 2001].) By allowing defendant to remain silent and not inform plaintiff of its reasons for failing to pay or deny a claim, the claim would be delayed indefinitely and no determination could ever be made if the claim was overdue. This might prevent plaintiff from commencing an action against defendant as premature, leaving the matter in limbo without any resolution. (See id.)
It is also unreasonable that defendant be rewarded for remaining silent and not having to act upon the receipt of information that plaintiff submitted in good faith in response to defendant’s request. It is important to note that in the cases where the courts have found the defendant’s time to pay or deny was tolled, it was because the plaintiff failed to respond in any manner to the defendant’s verification requests. (See New York & Presbyt. Hosp. v American Tr. Ins. Co., 287 AD2d 699, 700 [2d Dept 2001]; Westchester County Med. v New York Cent. Mut., 262 AD2d at 554; Boro Med., 2002 NY Slip Op 50538[U].) In that circumstance, a plaintiff remaining silent and failing to act in the face of a proper verification request would be aware of the reason its claim had not been paid and a defendant would not need to take any further action. In the present matter, however, plaintiff attempted in good faith to respond to defendant’s verification request. While plaintiffs response may have been months after receipt of the verification request, that delay only prejudiced plaintiff, who prolonged its time to be compensated for its claim. Defendant was not prejudiced by plaintiffs failure to submit prompt verification responses, since defendant’s time was tolled during the period its request remained outstanding. (See id.) Therefore, it is unreasonable to allow defendant to ignore information plaintiff submitted in good faith without informing plaintiff of its deficiencies and allowing plaintiff an opportunity to submit the proper information. Defendant had a number of options that it could have pursued once it received plaintiffs response rather than remaining silent. While an insurance company may not issue a denial of claim while its verification request remains outstanding, once it receives information from a claimant in response to its request, the ball is now in the insurance company’s court to act on the response. That action could be to pay the claim, deny the claim, or request further verification if it finds the provided response insufficient. The verification, however, does not remain outstanding simply because defendant only received some of the *913 material it requested. Rather, an insufficient response requires action by the insurance company to either deny the claim for failure to provide all the requested information or, more appropriately in light of the goals of the No-Fault Law, to send a follow-up verification request, acknowledging the material received and further requesting the omitted material. (See Westchester County Med. v New York Cent. Mut., 262 AD2d at 554; Boro Med., 2002 NY Slip Op 50538[U].)
Defendant claimed that the information provided by plaintiff was incomplete and was insufficient to comply with defendant’s request. Rather than remaining silent, defendant could have requested further verification, submitted the information supplied for a peer review, or issued a denial based upon plaintiffs failure to comply with verification requests.
Defendant could have issued a further request for verification, based upon the insufficiency of plaintiffs response. It could have informed plaintiff that it still had not provided certain medical records defendant requested. It also could have asked for further clarification of the information plaintiff submitted which defendant’s insurance adjuster found incomplete. By submitting the additional verification request, defendant would have preserved its defenses and tolled its time to pay or deny plaintiffs claim while the request remained outstanding. (See New York & Presbyt. Hosp. v American Tr. Ins. Co., 287 AD2d 699, 700 [2d Dept 2001]; Westchester County Med. v New York Cent. Mut., 262 AD2d at 554; Boro Med., 2002 NY Slip Op 50538[U].)
Defendant could have presented plaintiffs claim, including the response to its verification request, for a peer review. Since defendant’s insurance adjuster did not believe that the acupuncture report submitted by plaintiff was sufficient to comply with its request, defendant could have submitted the materials to a medical expert for review. That expert, with presumably more experience in the field of acupuncture than the insurance adjuster, could have informed defendant whether the information provided was responsive to defendant’s request, and made a determination whether the claim should be paid, denied, or if further verification was necessary.
Defendant also could have issued a denial, based upon plaintiff’s failure to comply with defendant’s verification requests. While the regulations prevent defendant from issuing a denial while a verification request remains outstanding, its request was no longer outstanding once it received plaintiffs re *914 sponse. Since it is defendant’s position that plaintiff had numerous opportunities to comply with defendant’s verification request and failed to do so, defendant could have issued a timely denial for plaintiffs failure to comply with verification requests without violating the no-fault regulations. Insurance companies often issue denials for other types of failure to comply with verification requests, such as when plaintiff assignors fail to appear at independent medical examinations or examinations under oath. (See Urban Med. Diagnostics, P.C. v Liberty Mut. Ins. Co., 2001 NY Slip Op 40655[U] [App Term 2001]; Millennium Med. Diagnostics, P.C. v Liberty Mut. Ins. Co., 2001 NY Slip Op 40654[U] [App Term 2001].)
As defendant took no steps to preserve its defenses to plaintiffs claim, this court finds that defendant failed to comply with the No-Fault Law by failing to either pay or deny the claim within 30 days from the date of receipt of plaintiffs response. Accordingly, judgment is awarded to plaintiff in the amount set forth in the complaint with statutory interest and fees.