OPINION OF THE COURT
Arlene P. Bluth, J.
*928 Plaintiff Dilon Medical Supply Corp. brought this action to recover first-party no-fault benefits in the amount of $1,928 plus statutory interest, costs, and attorneys’ fees for medical supplies it allegedly furnished to plaintiffs assignor, Cuthbert Grannum, on January 29, 2004, and February 16, 2004, following an alleged accident on November 5, 2003.
The trial was scheduled before me on March 10, 2005. Since the attorneys for both parties stipulated to the facts below, there was no testimony by witnesses.
For the following reasons, the court finds for defendant Travelers Insurance Company, and dismisses plaintiff’s complaint.
Stipulated Facts
Plaintiff Dilon Medical Supply Corp., as the proper assignee of Cuthbert Grannum, submitted two bills for no-fault benefits to defendant Travelers Insurance Company. The first bill was for $837 for six items furnished to plaintiffs assignor on January 29, 2004 (plaintiffs exhibit 1); the second was for $1,091 for four items furnished to plaintiffs assignor on February 16, 2004 (plaintiffs exhibit 2). Defendant’s timely request for verification (and timely follow-up thereto) asked that plaintiff “forward a letter of medical necessity for medical supplies” in order to process the claims (plaintiffs exhibit 3). Plaintiff received the requests but ignored them. Plaintiff did not respond because it believes the requests to be improper since plaintiff is merely a medical supply company and not a clinician capable of speaking to the medical necessity of the items furnished. Having received no response to its verification requests, defendant neither paid nor denied the claims. Plaintiff then initiated this action. Both parties subsequently moved for summary judgment. On December 21, 2004, on grounds unrelated to the issue before this court, Judge Ellen Gesmer denied both plaintiff’s and defendant’s motions for summary judgment.
Conclusions of Law
The issue in this case is whether an insurer can direct a request for verification of the necessity of medical supplies to the claimant medical supplier which, it is undisputed, has no clinical expertise. The Insurance Law and the regulations promulgated thereunder provide that “[wjithin 30 calendar days after proof of claim is received, the insurer shall either pay or deny the claim in whole or in part.” (11 NYCRR 65-3.8 [c]; *929 see Insurance Law § 5106 [a].) An insurer may extend this 30-day period if, within 15 business days after receipt of the claim, the insurer sends a request for further verification of the claim. (11 NYCRR 65-3.5 [b].) If the demanded verification is not received within 30 days, the insurance company must issue a follow-up request within 10 calendar days of the insured’s failure to respond. (11 NYCRR 65-3.6 [b].) The 30-day period which the insurer has to either pay or deny the claim does not begin to run until all demanded verification is provided. (11 NYCRR 65-3.8 [a] [1]; see New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568 [2d Dept 2004].) With exceptions not relevant here, the insurer is precluded from issuing a denial while a verification request is outstanding. (11 NYCRR 65-3.8 [b] [3].)
Just as the insurer has a duty to speedily process claims, the claimant for benefits has a duty of cooperation in supplying information reasonably requested by the insurer to process the claim. The regulations provide that the Mandatory Personal Injury Protection Endorsement, or no-fault section, of all insurance policies contain, inter alia, the following condition: “Upon request by the [Insurance] Company, the eligible injured person or that person’s assignee or representative shall . . . provide authorization that will enable the Company to obtain medical records; and . . . provide any other pertinent information that may assist the Company in determining the amount due and payable.” (11 NYCRR 65-1.1 [d] [“Conditions”].) Upon receipt of the initial prescribed verification forms, the insurer may request “any additional verification required by the insurer to establish proof of claim.” (11 NYCRR 65-3.5 [b]; see also Westchester Med. Ctr. v Travelers Prop. & Cas. Ins. Co., 2001 NY Slip Op 50082[U], *2-3 [Sup Ct, Nassau County 2001] [“(T)he requirement that a claim be paid or denied within 30 days is conditioned upon receipt of information requested by the insurer. This information is not necessarily that which can be found on the . . . prescribed verification forms . . . but any information that the carrier finds necessary to properly review and process the claim”].)
Here, defendant timely requested a letter of medical necessity — understood by both plaintiff and defendant to mean a narrative from the injured party’s medical provider explaining why the furnished supplies were necessary — from plaintiff, the party that had submitted the claim.
The substance of defendant’s verification request was both valid and proper — not only did defendant have the right to verify *930 the medical necessity of the supplies, it was required to do so if payment of the claims would turn on a determination of medical necessity. (See 11 NYCRR 65-3.5 [b].) Moreover, under the regulations, “[t]he insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested.” (11 NYCRR 65-3.5 [c].)
Plaintiff argues, however, that defendant’s request was improper in that it was directed to plaintiff, a mere equipment supplier with no clinical expertise. Plaintiff claims that defendant obviously knew that plaintiff would in turn have to contact either its assignor or his medical provider to obtain the letter of medical necessity. According to plaintiff, defendant should have directed its request to the treating medical provider, or, if defendant did not know the provider’s name or address, requested that information from plaintiff, or asked plaintiff for the prescriptions it had received from its assignor. In support of its argument, plaintiff cites section 65-3.5 (a) of the regulations, which provides: “Within 10 business days after receipt of the completed application for motor vehicle no-fault benefits . . . , the insurer shall forward, to the parties required to complete them, those prescribed verification forms it will require prior to payment of the initial claim.” (11 NYCRR 65-3.5 [a] [emphasis added].)
A plain reading of that provision, however, makes clear that it governs initial requests for verification by which insurers may require parties to complete the requisite forms that comprise the initial claim for benefits — that is, in setting up the injured party’s file. That is not the case here. A request for a letter of medical necessity is a request for additional verification governed by subdivision (b) of this section, and subdivision (b) does not qualify to whom requests for additional verification must be sent. Any additional verification that could be sought from plaintiffs assignor may be sought from plaintiff* because “[a]n assignee stands in the shoes of the assignor.” (Arena Constr. Co. v Sackaris & Sons, 282 AD2d 489, 489 [2d Dept 2001].)
Accordingly, when a claimant submits bills to an insurer for payment, the claimant, who stands in the shoes of his assignor, must deal in good faith and cooperate with the insurer if it wants to get paid. This includes responding to a proper and timely verification request, even if the claimant anticipates that *931 it will not be able to satisfy the insurer’s request. In other words, even if the claimant believes it cannot or need not comply with the insurer’s request, the claimant still has a duty to communicate with the insurer regarding the request.
In so holding, this court follows the reasoning of the Second Department. For example, where a plaintiff medical provider found an insurer’s demands “so lacking in specificity as to be ‘unintelligible’ and that such demands were, therefore, nullities,” the Second Department refused to excuse plaintiffs non-responsiveness to defendant’s requests. ('Westchester County Med. Ctr. v New York Cent. Mut. Fire Ins. Co., 262 AD2d 553, 555 [2d Dept 1999].) “[T]he notices clearly constituted demands for further verification of the claim within the no-fault regulatory scheme. Any confusion on the part of the plaintiff as to what was being sought should have been addressed by further communication, not inaction. Accordingly, as the plaintiff does not dispute that the demanded verification was never supplied, the 30-day period in which the defendant had to pay or deny the . . . claim never commenced and that claim is not overdue.” (Id.)
The Second Department has also dismissed no-fault actions where the plaintiff failed to respond because the insurer’s request was allegedly not on a proper form (Hospital for Joint Diseases v State Farm Mut. Auto. Ins. Co., 8 AD3d 533, 535 [2d Dept 2004]; St. Vincent’s Hosp. of Richmond v American Tr. Ins. Co., 299 AD2d 338 [2d Dept 2002]) or was sent to the plaintiff’s attorney rather than directly to plaintiff (St. Vincent’s Hosp. of Richmond, 299 AD2d at 340; New York Hosp. Med. Ctr. of Queens v State Farm Mut. Auto. Ins. Co., 293 AD2d 588 [2d Dept 2002]). The contours of plaintiffs duty of cooperation are good faith and common sense. “[E]ven if [the insurer’s] request for the hospital records should have been sent directly to the hospital, its attorney, upon receiving the requests, should have contacted State Farm and communicated that requirement, or forwarded State Farm’s requests to the hospital himself.” (New York Hosp. Med. Ctr. of Queens, 293 AD2d at 591.)
When plaintiff received defendant’s verification requests, it had a duty to respond. Plaintiff might have submitted the prescriptions it had received from its assignor. It might have supplied the name and address of the treating physician. It might have contacted its assignor to obtain a letter of medical necessity from his physician, or contacted the physician directly. *932 Because plaintiff simply ignored the requests altogether, however, it is unnecessary for the court to decide what the minimum adequate response would have been.
Because plaintiff failed to respond to defendant’s valid and proper verification requests, the 30-day period within which defendant had to either pay or deny the claim did not begin to run. (See Hospital for Joint Diseases v State Farm Mut. Auto. Ins. Co., 8 AD3d 533, 534-535 [2d Dept 2004]; St. Vincent’s Hosp. of Richmond v American Tr. Ins. Co., 299 AD2d 338, 340 [2d Dept 2002].) Therefore, plaintiff’s claims for no-fault benefits are not overdue, and this action is premature and must be dismissed. (See Hospital for Joint Diseases, 8 AD3d at 534-535; St. Vincent’s Hosp. of Richmond, 299 AD2d 338 [2002]; New York Hosp. Med. Ctr. of Queens, 293 AD2d at 591.) Accordingly, judgment is for defendant and plaintiff’s complaint is hereby dismissed.

 Obviously, in the case of an IME or EUO of the injured party, only the injured party can actually provide the requested verification.