OPINION OF THE COURT
William A. Viscovtch, J.
Due to the similarity of the factual background and legal issues to be determined in these matters, the two cases herein were consolidated for trial purposes before this court. After a pretrial conference, the parties stipulated on the record as follows as to both cases:
1. Plaintiff has established its prima facie case as a matter of law;
2. Defendant has issued timely verification requests to the plaintiffs attorney;
3. The plaintiffs attorney responded to those verification requests with identical “compliance letters” in each case.
Also, while not stipulated to on the record, the following facts are undisputed. In the first action (Isabel Graulan), plaintiff submitted one bill totaling $676.98 for supplies rendered to the claimant for date of service August 15, 2007. Along with the bill was a letter from plaintiffs counsel requesting that any and all verification requests be directed to their office. Defendant timely received this bill on or about August 15, 2007. Thereafter, defendant timely requested from plaintiffs attorney additional verification on August 24, 2007, with a follow-up request on September 24, 2007, both seeking a narrative report of the patient’s initial consultation from the prescribing/referring physician (specifically, naming one Dr. Goldman).
*547 Likewise, in the second action (Cesare Iori), plaintiff timely submitted a bill totaling $372.98 for supplies rendered to the claimant for date of services July 17, 2007 (again with a letter from plaintiffs attorney requesting that any and all verification requests be directed to their office), which defendant timely received on or about July 25, 2007. Thereafter, defendant timely requested additional verification on August 14, 2007, with a follow-up request made on September 18, 2007 seeking a manufacturer’s invoice documenting the cost of the medical equipment or supplies and proof of payment for the medical equipment or supplies.
In both cases, the plaintiff’s attorney responded to the verification requests after the follow-up letter had been sent. These self-titled “compliance letters” read, in part, as follows:
“Please be advised that the bills, medical reports, assignment of benefits and proof of claim were previously provided with the initial submission of the claim for the above-referenced patient. Be further advised that this response constitutes full compliance with any purported requests and constitutes the provider’s submission of all relevant documents in the provider’s possession. Any further requests should be directed to the party that possesses such other information. Therefore any further requests to this provider are deemed unnecessary and in violation of 11 NYCRR § 65-3.2 (c)” (emphasis added).
A review of the transcript of the proceeding reveals some confusion as to the exact nature of the issues to be decided. Nonetheless, based upon the transcript and the briefs submitted by the parties, the court has determined that the following issues control its decision in these matters:
1. Were defendant’s verification requests proper;
2. If so, were plaintiffs responses to the defendant’s verification requests sufficient; and
3. If not, was defendant obligated to respond further to plaintiff in some form to communicate its position that the response was insufficient or could it remain silent?
Discussion of Law
Defendant’s Verification Requests Were Proper
An insurance carrier is permitted to request additional information from a claimant through a proper and timely verifica-
*548 tion request. (See generally 11 NYCRR 65-3.5 [b].) While the materials an insurer may request are not unlimited (see generally 11 NYCRR 65-3.5 [b]), the Insurance Law and regulations clearly outline an insurer’s right to request and receive information necessary to the processing of a provider’s claim for no-fault benefits. Furthermore, “[t]he insurer is entitled to receive all items necessary to verify the claim.” (See 11 NYCRR 65-3.5 [c].) As such, the issue for this court to determine is whether the verification requests in each of these cases were in some way inappropriate or otherwise beyond the scope of a proper verification request.
In the Graulan matter, the insurer requested “a narrative report of the patient’s initial consultation from the prescribing/ referring physician (Dr. Goldman).” In the Iori matter, the insurer requested a “manufacturers invoice documenting the cost of the medical equipment or supplies” and “proof of payment for the medical equipment or supplies.” In both cases, the court finds that said requests were reasonable and in accordance with the statutory and regulatory framework of New York State’s no-fault insurance statutes and regulations.
As such, the court must now address the issue of the sufficiency of plaintiff’s responses to the defendant’s verification requests.
In the Graulan Matter, Plaintiffs Response to Defendant’s Verification Request was Sufficient
In the Graulan matter, the defendant’s reasonable verification request was for “a narrative report of the patient’s initial consultation from the prescribing/referring physician (Dr. Goldman).” The plaintiffs response, while pro forma, did clearly state that “further requests should be directed to the party that possesses such other information.” In this matter, that party seems to be one Dr. Goldman, who was likely known to the insurer, as evidenced by the doctor’s name being placed on the verification request.
Pursuant to 11 NYCRR 65-3.2 (e) and (f), an insurer is under a duty to “[c]learly inform the applicant” of its position and must “[r]espond promptly . . . to all communications from . . , attorneys,” including responses to verification requests. Indeed, an insurer is required to respond to a response to a verification request, regardless of whether it feels the response is sufficient. (See All Health Med. Care v Government Empls. Ins. Co., 2 Misc 3d 907 [Civ Ct, Queens County 2004, Agate, J.]; Lenox Hill Radiology, P.C. v Allstate Ins. Co., Civ Ct, NY County, 2008,
*549 Moulton, J., index No. 076/08; Media Neurology, P.C. v Countrywide Ins. Co., 21 Misc 3d 1101[A], 2008 NY Slip Op 51902[U] [Civ Ct, Kings County 2008, Ash, J.].)
At the very least, given that the response to the verification request was somewhat on point, the defendant should have responded to the verification response as being insufficient. More importantly, however, defendant should have forwarded a verification request to Dr. Goldman, or if it could not locate Dr. Goldman, the defendant should have requested that plaintiff provide contact information for him. Either way, had no response been forthcoming from either Dr. Goldman or plaintiff, this action would be premature and the court would be inclined to dismiss it as such due to the plaintiffs failure to provide a legitimate verification response.
Given the defendant’s failure to take action on plaintiff’s marginally acceptable verification response, the court finds in favor of the plaintiff in the amount of $676.98 plus statutory interest, attorneys fees and costs and disbursements.
In the Iori Matter, Plaintiffs Response to Defendant’s Verification Request was Insufficient and as Such Defendant was Not Obligated to Respond Further to Plaintiff in Some Form to Communicate Its Position the Response was Insufficient
Unlike the previous matter, the court finds that plaintiffs response to the defendant’s request for verification was insufficient. As previously decided herein, the defendant’s verification request for a “manufacturers invoice documenting the cost of the medical equipment or supplies” and “proof of payment for the medical equipment or supplies” was eminently reasonable.
While plaintiffs response in this matter was identical to the response in the previous matter, it was, at best, vague, disingenuous and totally lacking in any guidance that the defendant could find useful in obtaining the requested information. It contained neither the information requested nor alternative information sufficient to allow the defendant to expedite either payment or denial of the claim. Nor was there any indication, as in Graulan, that defendant might know whom to contact other than the plaintiff.
Here it should be pointed out that the requested items, unlike in the previous case, were likely in the control of, or at least accessible to the plaintiff. This court finds it extremely difficult to believe that plaintiff, with the assistance of counsel, who was basically acting as its billing agent (see Lenox Hill Radiology &
*550 MIA P.C. v Global Liberty Ins., 20 Misc 3d 434 [Civ Ct, NY County 2008, Bluth, J.], could not obtain either a manufacturer’s invoice or a proof of payment for the items provided. In that case, involving the same plaintiffs firm, it seems that the response to the verification request therein was identical to the responses contained herein.
Courts have endorsed not only the legal obligation to respond to verification requests, but have distinctly addressed the contractual and professional obligation to likewise respond. In the case of Dilon Med. Supply Corp. v Travelers Ins. Co. (7 Misc 3d 927 [Civ Ct, Kings County 2005]), the court stated that “when a claimant submits bills to an insurer for payment, the claimant, who stands in the shoes of his assignor, must deal in good faith and cooperate with the insurer if it wants to get paid” (id. at 930). The court further outlined a good faith duty with respect to responses to verification requests, noting that “even if the claimant believes it cannot or need not comply with the insurer’s request, the claimant still has a duty to communicate with the insurer regarding the request” (id. at 931).
While in that case, unlike here, there was no response whatsoever to defendant’s verification request, the plaintiffs response herein hardly constitutes good faith and is made more unacceptable by the language contained therein that it constituted “full compliance with . . . purported [verification] requests” and that “any further requests to this provider are deemed unnecessary and in violation of 11 NYCRR § 65-3.2 (c).”
As Judge Bluth stated in Lenox Hill Radiology & MIA PC v Government Empls. Ins. Co. (NYLJ, Aug. 27, 2008, at 27, cols 1, 2 [index No. 39CVN 2008]),
“[J]ust because plaintiffs attorney labeled the letters ‘Verification Compliance’ does not make it so. The label is meaningless; in no way can any literate person possibly construe that letter as complying with the verification request. No verification was supplied. Those letters, which completely ignored defendant’s bona fide requests . . . specifically informed defendant that plaintiff would not be providing whatever information may have been requested. Plaintiff’s attorneys’ self-serving and threatening . . . letters did not call for a response — in fact, by specifically putting the defendant on notice that nothing else would be forthcom *551 ing and that any further request would be ‘unnecessary and in violation of 11 NYCRR § 65-3.2(c)’ — plaintiff’s attorneys instructed defendant not to respond. Moreover, 11 NYCRR § 65-3.2 (f) only requires the insurer to respond when a response is indicated and here, no response was indicated” (emphasis added).
While the court is reluctant to impose this limitation on plaintiffs, given that the history and purpose of New York State’s enactment of the No-Fault Law is to ensure the prompt and expeditious payment of claims (see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 284 [1997]), there is a somewhat competing policy concern that an insurer “is entitled to receive all items necessary to verify the claim” (see 11 NYCRR 65-3.5 [c]). Allowing the document submitted by plaintiff to qualify in this matter as a legitimate verification response could encourage no-fault plaintiffs to simply ignore verification requests based upon their own interpretation of what constitutes a valid response. As in this particular matter, they would then be able to provide nonresponsive “verifications” on their own terms, thus enabling them to move matters prematurely into litigation without a full prior vetting of the matter as anticipated by the no-fault statutes.
As such, the complaint in the matter of Custom Orthotics, LTD., as assignee of Cesare Iori v Government Empls. Ins. Co. is dismissed as premature.