■ MOUNT SINAI HOSPITAL, as Assignee of Ana Rodriguez, Appellant, v NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY, Respondent. [991 NYS2d 634]—

In an action to recover no-fault benefits under a policy of automobile insurance, the plaintiff appeals from an order of the Supreme Court, Nassau County (McCormack, J.), dated October 16, 2012, which denied its motion for summary judgment on the complaint and granted the defendant's cross motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, the plaintiff's motion for summary judgment on the complaint is granted, and the defendant's cross motion for summary judgment dismissing the complaint is denied.

In March 2011, Ana Rodriguez, who was insured under a policy of automobile insurance issued by the defendant, New York Central Mutual Fire Insurance Company (hereinafter New York Central), allegedly was injured in an automobile accident. In November 2011, she received treatment at a hospital facility of the plaintiff, Mount Sinai Hospital (hereinafter Mount Sinai). In early December 2011, a few days after Mount Sinai rendered this treatment, it sought payment for it. Mount Sinai's third-party biller, The Outsource Group (hereinafter Outsource), sent a Form UB-04 and a letter requesting payment to New York Central. Twenty days after New York Central received the request, it requested verification of Mount Sinai's claim. Approximately one week after New York Central sent the verification request, it received from Outsource more than 100 pages of documents, including records of Rodriguez's treatment at Mount Sinai and various forms Rodriguez had completed there. New York Central did not request further verification. On January 27, 2012, less than 30 days after it received these records, New York Central issued a denial of the claim on a Form NF-10. The Form NF-10 was, in all substantial respects, complete.

Two months later, on March 26, 2012, Mount Sinai, which was now represented by a different third-party biller, issued another request for payment of its bill for the treatment it had rendered to Rodriguez. This time, Mount Sinai's third-party

biller issued the request on a Form NF-5. New York Central ignored this request for payment, and, in May 2012, Mount Sinai, as assignee of Rodriguez, commenced this action seeking payment. Mount Sinai eventually moved for summary judgment on the complaint, and New York Central cross-moved for summary judgment dismissing the complaint. The Supreme Court denied Mount Sinai's motion and granted New York Central's cross motion. Mount Sinai appeals. We reverse.

In *Sound Shore Med. Ctr. v New York Cent. Mut. Fire Ins. Co.* (106 AD3d 157 [2013]), this Court summarized the claim procedure under New York's "no-fault" insurance scheme:

"Pursuant to the regulations promulgated by the Superintendent of Insurance to implement the No-Fault Law (Insurance Law art 51), an injured party, or that person's assignee, must submit a written notice of claim to an insurer no later than 45 days after services are rendered (11 NYCRR 65-2.4). The written notice required to obtain first party benefits 'shall be deemed to be satisfied by the insurer's receipt of a completed prescribed application for motor vehicle no-fault benefits (NYS Form N-F 2) . . . or by the insurer's receipt of a completed hospital facility form (NYS Form N-F 5)' (11 NYCRR 65-3.3 [d]). '[P]roof of claim . . . shall include verification of all of the relevant information requested' (11 NYCRR 65-3.8 [a] [1]). 'An insurer must accept proof of claim submitted on a form other than a prescribed form if it contains substantially the same information as the prescribed form' (11 NYCRR 65-3.5 [f]). However, 11 NYCRR 65-3.5 (g) provides that '[i]n lieu of a prescribed application for motor vehicle no-fault benefits submitted by an applicant [NYS Form N-F 2] and a verification of hospital treatment (NYS form NF-4), an insurer shall accept a completed hospital facility form (NYS form NF-5) (or an NF-5 and uniform billing form [UBF-1] which together supply all the information requested by the NF-5) submitted by a provider of health services with respect to the claim of such provider.'

"Within 30 calendar days after receipt of the proof of claim for no-fault benefits, an insurer can either pay the claim, in whole or in part, deny it, or seek verification of it (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [c]). A no-fault insurance carrier waives its defenses, other than those based on the complete absence of coverage (e.g., a defense to the effect that it never wrote a policy for the claimant), if it fails to deny a no-fault claim, or seek verification, within 30 calendar days after having received proof of claim (*see* Insurance Law § 5106 [a]; 11 NYCRR 65-3.8 [a] [1]; [c] . . . ).

"When a no-fault claim has been assigned to a hospital or medical provider and the hospital or medical provider sends an N-F 5 form to the no-fault insurer, the no-fault insurer's receipt of an N-F 5 form triggers the running of the 30-day period within which the insurer has a duty to pay or to deny the claim, or to seek verification of it. Subsequent to the receipt of the N-F 5 form, if the insurer requires any additional information to evaluate the proof of claim, such request for verification must be made within 15 business days of the receipt of the N-F 5 form in order to toll the 30-day period (*see* 11 NYCRR 65-3.5 [b]). Where there is a timely original request for verification, but no response to the request for verification is received within 30 calendar days thereafter, or the response to the original request for verification is incomplete, then the insurer, within 10 calendar days after the expiration of that 30-day period, must follow up with a second request for verification (*see* 11 NYCRR 65-3.6 [b]). If there is no response to the second, or follow-up, request for verification, the time in which the insurer must decide whether to pay or deny the claim is indefinitely tolled. Thus, when a no-fault medical service provider fails to respond to the requests for verification, the 30 days in which to pay or deny the claim is tolled and does not begin to run. Accordingly, any claim for payment by the medical service provider after two timely requests for verification have been sent by the insurer subsequent to its receipt of an N-F 5 form from the medical service provider is premature, if the provider has not responded to the requests. Nothing in the rules requires a second follow-up, that is, a third request for verification.

"However, a request for verification that *precedes* a no-fault insurer's receipt of the prescribed N-F 5 claim form does not trigger the tolling of the 30-day period within which an insurer must determine whether to pay or deny such a claim. The 'UBF-1' form referred to in 11 NYCRR 65-3.5 (g) is the predecessor of the current 'UB-04' form. Under 11 NYCRR 65-3.5 (g), a UBF-1/UB-04 form *together with* an N-F 5 form must be accepted by a no-fault insurer. The regulation does not state that a UBF-1/UB-04 form *alone* must be treated as the 'functional equivalent' of an N-F 5 form" (*id.* at 162-164 [citations omitted]).

Here, in reliance on *Sound Shore,* Mount Sinai contends that its billing through Outsource in December 2011 on a Form UB-04 did not commence the 30-day period in which New York Central was required to pay, deny, or request verification of Mount Sinai's claim. Instead, Mount Sinai contends, the 30-day period commenced in March 2012, when Mount Sinai submitted

a billing request on a Form NF-5. In effect, Mount Sinai contends, New York Central's denial of claim in January 2012 did not deny anything; there was no claim submitted in December to deny. Finally, inasmuch as Mount Sinai established, prima facie, that New York Central did not pay, deny, or request verification of the March claim within 30 days after receiving it, New York Central had waived its defenses, so summary judgment on the complaint was required (*see Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co.*, 114 AD3d 33, 41 [2013]).

New York Central, by contrast, contends that the 30-day period commenced when it received the Form UB-04 in December 2011, that it timely requested verification of the claim, and that, after it received the medical records, it timely denied the claim in January 2012. Mount Sinai could not commence the 30-day clock anew by submitting the same claim several months later (*see Hospital for Joint Diseases v Allstate Ins. Co.*, 5 AD3d 441, 442 [2004]).

We conclude that the Supreme Court erred in denying Mount Sinai's motion for summary judgment on the complaint and in granting New York Central's cross motion for summary judgment dismissing the complaint. Under our decision in *Sound Shore,* the 30-day period for New York Central to pay or deny the claim did not begin to run until March 26, 2012, when Mount Sinai submitted the Form NF-5, which contained the information needed. Because New York Central did not pay or deny the claim within 30 days thereafter, it was precluded from raising defenses. In other words, the defective "claim" submitted in December 2011 did not start the 30-day clock, so New York Central's denial in January 2012 was of no effect (*see Mount Sinai Hosp. v Dust Tr., Inc.*, 117 AD3d 921, 921 [2014]).

In summary, in support of its motion for summary judgment on the complaint, Mount Sinai satisfied its prima facie burden of establishing that New York Central received its Form NF-5 in March 2012 and that payment of the no-fault benefits was overdue because the claim was neither paid nor denied within 30 days (*see Westchester Med. Ctr. v Allstate Ins. Co.*, 114 AD3d 672, 672-673 [2014]; *Viviane Etienne Med. Care, P.C. v Country-Wide Ins. Co.*, 114 AD3d at 40-41). In opposition, New York Central failed to raise a triable issue of fact (*see Westchester Med. Ctr. v Allstate Ins. Co.*, 114 AD3d at 672-673).

Moreover, the Supreme Court should have denied New York Central's cross motion for summary judgment dismissing the complaint. Mount Sinai's complaint was predicated solely upon New York Central's failure to pay or deny the March 2012 claim within 30 days of receipt. New York Central failed to establish,

prima facie, that it paid or denied that claim within 30 days after receipt. Accordingly, New York Central was not entitled to summary judgment dismissing the complaint (*see New York & Presbyt. Hosp. v Allstate Ins. Co.*, 31 AD3d 512, 513 [2006]; *cf. Hospital for Joint Diseases v Allstate Ins. Co.*, 5 AD3d at 442).

In light of our determination, we need not address Mount Sinai's remaining contention. Rivera, J.P., Balkin, Hinds-Radix and Maltese, JJ., concur.