This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 97
Aetna Health Plans, &c.,
             Appellant,
          v.
Hanover Insurance Company,
             Respondent.


                  Jonathan A. Dachs, for appellant.
                  Barry Levy, for respondent.
                  American Insurance Association, amicus curiae.


PIGOTT, J.:

          The issue presented in this appeal is whether a health

insurer who pays for medical treatment that should have been

covered by the insured's no-fault automobile insurance carrier,

may maintain a reimbursement claim against the no-fault insurer

within the framework of the Comprehensive Motor Vehicle

                              - 1 -

Reparations Act (Insurance Law § 5101, et seq) (the "No-Fault" Law).  Because New York's "No-Fault" statutory law and regulatory scheme does not contemplate such reimbursement to a health insurer, as opposed to a health care provider, we hold that it may not.

I.

On April 25, 2008, Luz Herrera sustained personal injuries while operating a vehicle insured by defendant Hanover Insurance Company.  At the time of the accident, Herrera also had private health insurance through plaintiff Aetna Health Plan.

Herrera received medical treatment for her injuries from various medical providers.  Although Aetna alleges that the bills should have been paid by Hanover, the no-fault insurer, the medical providers submitted some of their bills for treatment directly to Aetna.  Aetna paid the bills, initially totaling $19,649.10.

Aetna, through its representative, wrote to Hanover in March 2009 seeking reimbursement for the medical bills it had paid, but Hanover did not respond.  At the same time, Aetna filed a lien for reimbursement should Herrera recover in a personal injury action that she had brought against the alleged tortfeasor who caused her injuries in the accident.

On January 6, 2010, Herrera, through her attorneys, submitted copies of the medical bills paid by Aetna to Hanover, demanding payment.  Hanover did not respond to Herrera's demands

either.

Herrera then demanded arbitration pursuant to her policy with Hanover, claiming that she was entitled to the no-fault benefits because Aetna maintained a lien against her for reimbursement and Hanover, who was responsible for the bills, had neither paid nor denied coverage for the bills submitted.  The arbitrator denied Herrera's claim in its entirety, reasoning that the documents submitted by Herrera -- copies of the medical bills paid by Aetna -- were not "bills."[1]  Further, the arbitrator asserted that even if they were considered "bills," Herrera lacked standing to make the claim because Aetna had paid them. The arbitrator determined that, while Aetna had a lien against Herrera, until that lien was satisfied, Herrera lacked standing to pursue her claim.  A Master Arbitrator affirmed that decision.

In addition to the payments that were the subject of the arbitration, Herrera's medical providers continued to submit bills to Aetna for her ongoing treatment, and Aetna continued to pay an additional $23,525.73 in medical bills.

Thereafter, Herrera, through her attorney, resubmitted all of the medical bills to Hanover and informed it that she had assigned her rights against Hanover to Aetna.

II.

Aetna commenced this action against Hanover, seeking reimbursement for the amounts paid on Herrera's behalf, plus

---

[1]  The documents stated "This is not a bill."

interest and attorneys' fees.  Hanover answered, generally denying Aetna's allegations and asserting affirmative defenses.

Aetna moved for summary judgment, arguing that Hanover breached its contract of insurance with its assignor, Herrera. Aetna claimed that as the assignee of Herrera's claim for no-fault benefits, it stood in the shoes of Herrera and was entitled to reimbursement for the monies it paid for the medical treatment Herrera received resulting from the motor vehicle accident.

Hanover opposed the motion and cross-moved to dismiss the complaint based upon lack of standing, arguing that Aetna was not entitled to direct reimbursement under 11 NYCRR 65-3.11 (a) because it was an insurance company and not a provider of health care services, the only type of assignee permitted by regulation and Aetna was not in privity of contract with Hanover.  Hanover cross-moved for summary judgment dismissing the complaint as neither Herrera nor Aetna timely submitted the medical bills to Hanover.

Aetna responded that Hanover was judicially estopped from arguing that Aetna lacked standing because in the prior arbitration Hanover asserted -- and the arbitrators agreed -- that Aetna was the proper party with standing, not Herrera.

Supreme Court granted Hanover's cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), and denied Aetna's motion for summary judgment on liability as moot.  The court concluded that because Aetna was not a "health care provider"

under the no-fault statute, it was not entitled to direct payment of no-fault benefits.  It further held that Aetna was not in privity of contract with Hanover and had not shown that it was an intended third-party beneficiary of Hanover's contract with Herrera.  Finally, the court determined that Aetna could not sustain a cause of action under subrogation principles because "there was no authority permitting a health insurer to bring a subrogation action against a no-fault insurer for sums the health insurer was contractually obligated to pay its insured."

The Appellate Division unanimously affirmed (116 AD3d 538 [1st Dept 2014]).  The court determined that Aetna "is not a 'health care provider' under [11 NYCRR 65-3.11 (a)], but rather a heath care insurer" that Hanover had no legal obligation to directly reimburse (id. at 539).  It concluded that the provisions of Insurance Law §§ 5105 and 5106 (d) provide for "a limited window of arbitration between no-fault insurers" that "does not pertain to a health insurer such as Aetna" and consequently Aetna could not maintain a subrogation claim against Hanover (id.).  The court stated that, because there was no "privity of contract" between Aetna and Hanover, nor was Aetna a "third-party beneficiary of the contract" between Hanover and Herrera, Aetna could not assert a breach of contract claim against Hanover (id.).

### III.

Article 51 of the New York Insurance Law, enacted as

the Comprehensive Motor Vehicle Insurance Reparations Act (see L 1973, ch 13), governs payments to reimburse a person for basic economic loss for personal injury arising out of the use or operation of a motor vehicle, irrespective of fault.  Article 51 is commonly known as the No-Fault Law.  The purpose of the No-Fault Law was to promote "prompt resolution of injury claims, limiting cost to consumers and alleviating unnecessary burdens on the courts" (Pommells v Perez, 4 NY3d 566, 571 [2005] [citations omitted]).  Under no-fault, an insured who has been in a motor vehicle accident can claim first party benefits from her motor vehicle insurer of up to $50,000 to cover "basic economic loss" as defined in Insurance Law § 5102 (a) (4).  In the event of "serious injury" as defined in the statute, a person may initiate suit against the car owner or driver for damages caused by the accident (Insurance Law § 5104 [a]).

The applicable regulation, 11 NYCRR 65.3.11 (a) provides, in relevant part, that "an insurer shall pay benefits for any loss, other than death benefits, *directly to the applicant or, . . . upon assignment by the applicant . . .shall pay benefits directly to providers of health care services. . .*" (emphasis added).  Aetna concedes that as a health insurer it is not a "provider of health care services" as contemplated by the language of this regulation (see Health Insurance Plan of Greater New York v Allstate Insurance Co., 2007 N.Y.Slip Op 33925[U] [Sup Ct, NY County 2007]; see also Gen. Counsel Opinion 1-28-2008).

Aetna argues, however, that it stands in Herrera's shoes because Herrera assigned her no-fault rights to it.

This argument fails for two reasons. First, since Herrera's health care providers were able to bill and recoup payment from Aetna, an assignment by Herrera of her no-fault rights had already been made, leaving her with no rights to assign to Aetna. Second, by its very language, the no-fault regulation permits only the insured -- or providers of health care services by an assignment from the insured -- to receive direct no-fault benefits. Because Aetna does not fall under the term "health care provider," Herrera could not assign her rights to it.[2]

Accordingly, the order of the Appellate Division should be affirmed, with costs.

---

[2] Contrary to the view of the dissent, there is nothing inequitable in adhering to the "no-fault" statutory and regulatory law in resolving this claim for reimbursement.

Aetna Health Plans v Hanover Insurance Company

No. 97

STEIN, J.(concurring):

I am in complete agreement with the majority's analysis regarding plaintiff Aetna Health Plans' inability to recover under the No-Fault Law and related regulations. However, I write separately to address the dissent's analysis of Aetna's equitable subrogation claim. In my view, Supreme Court properly dismissed the complaint because Aetna's claims are inconsistent with, and would improperly supplant, the tightly-regulated and comprehensive no-fault statutory scheme crafted by the legislature, and because the principles of equitable subrogation do not apply under the circumstances presented here. I, therefore, concur with the majority's conclusion that the Appellate Division's order should be affirmed.

As the majority aptly explains, the no-fault insurance statutes and regulations provide a comprehensive framework for the resolution and payment of no-fault benefits in connection with covered injuries. Those statutes and regulations provide no basis for a health maintenance organization (HMO) to recover from a no-fault insurer. Thus, under circumstances in which an HMO attempts to recover from a no-fault insurer for payments made on behalf of their mutual insured, the doctrine of equitable

- 1 -

subrogation does not apply.

The State Insurance Department's Office of General Counsel has issued an informal opinion on the topic of subrogation by an HMO (such as Aetna) (see Ops Gen Counsel NY Ins Dept, 1-28-2008 [#2], HMO as No-Fault Subrogee, available at http://www.dfs.ny.gov/insurance/ogco2008/rg080108.htm).[1]  In its opinion, the Insurance Department stated that an "HMO is not entitled to subrogate its recovery pursuant to New York Insurance Law § 5105 (a) . . ., because it does not fit the definition of 'insurer' under the no-fault insurance law scheme."  The Insurance Department reasoned that an HMO is not required to pay for the insured's treatment in the first place because it is permitted to exclude coverage for treatment that is recovered or recoverable under no-fault (see 11 NYCRR 52.16 [c] [8]).  Further, the key no-fault regulation permits direct payment from no-fault insurers to medical providers (see 11 NYCRR 65-3.11) and, in most situations, the insured assigns the benefits to such providers, which then undertake the responsibility of seeking payment from the no-fault insurer.

Essentially, based on its interpretation of the no-fault statutes and regulations, the Insurance Department has advised insurers that an HMO should refuse to pay for any

---

[1] The former Insurance Department now falls within the Department of Financial Services (see Financial Services Law § 102), which has posted the former agency's informal opinions on its website.

treatment covered under no-fault because, under the no-fault scheme, the HMO will not be able to subrogate its recovery if it makes such payments. While not binding on courts, such informal opinions and interpretations of insurance law are entitled to deference unless irrational or unreasonable, due to the Superintendent's "'special competence and expertise with respect to the insurance industry'" (A.M. Med. Servs., P.C. v Progressive Cas. Ins. Co., 101 AD3d 53, 64 [2d Dept 2012], quoting Matter of New York Pub. Interest Research Group v New York State Dept. of Ins., 66 NY2d 444, 448 [1985]; see also Financial Services Law § 202 [a]).

As the dissent notes, the doctrine of equitable subrogation can be

> "broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability" (Gerseta Corp. v Equitable Trust Co. of N.Y., 241 NY 418, 425-426 [1926]).

However, unlike the traditional equitable subrogation situation -- involving an active wrongdoer (tortfeasor) and an innocent insurer -- equity does not dictate the outcome of who should pay for medical treatment under the no-fault scheme when the dispute is between two types of insurers, neither of which caused the physical injuries. Moreover, Aetna's payments were not made to

discharge an existing liability because, according to the
Insurance Department opinion and pursuant to 11 NYCRR 52.16 (c)
(8), an HMO has no obligation to reimburse for no-fault
recoverable treatment.

"Subrogation allocates responsibility for the loss to
the person who in equity and good conscience ought to pay it, in
the interest of avoiding absolution of a wrongdoer from liability
simply because the insured had the foresight to procure insurance
coverage" (North Star Reins. Corp. v Continental Ins. Co., 82
NY2d 281, 294 [1993]; see Millennium Holdings, LLC v Glidden Co.,
__ NY3d __, 2016 NY Slip Op 03543, *5-6 [May 5, 2016]).  Thus, in
the typical example of subrogation, an insurer attempts to recoup
covered medical expenses from the tortfeasor who caused the
insured's injuries and need for treatment in the first place (see
e.g. ELRAC, Inc. v Ward, 96 NY2d 58, 75-76 [2001]; Teichman v
Community Hosp. of W. Suffolk, 87 NY2d 514, 521-522 [1996]).[2]  In
such circumstances, as a matter of fairness, an insurer who was
compelled by contract to pay for medical treatment required by
its insured due to the negligent or intentional actions of
another ought to be able to obtain reimbursement from the party
who was at fault and caused those damages (see Allstate Ins. Co.

_____

[2] Subrogation may also be available under a contract, which
is distinguishable from equitable subrogation.  In addition,
there may be equitable subrogation situations outside the no-
fault context in which an insurer seeks recovery from another
party who is not a wrongdoer, but we have no occasion to address
such situations here.

v Stein, 1 NY3d 416, 422 [2004], citing Ocean Acc. & Guar. Corp.
v Hooker Electrochemical Co., 240 NY 37, 47 [1925]).

Here, however, defendant Hanover Insurance Company is
Luz Herrera's no-fault insurer, not the wrongdoer (i.e., the
third-party tortfeasor who caused the underlying loss or injury
to Herrera).  It does not appear that either Aetna or the medical
providers are completely without fault concerning the billing
issue with which we are now confronted.  The medical providers
submitted their bills to the incorrect insurer, creating the
false impression that Aetna's policy covered Herrera's treatment,
when her injuries were actually related to her no-fault accident.
For its part, Aetna continued to pay those bills, without
notifying the providers of this mistake, even after Aetna learned
that they should have been submitted to Hanover.  On the other
hand, no argument is made that Hanover is responsible for the
incorrect billing.  Aetna has apparently not sought to recoup
directly from the tortfeasor Aetna's payments on Herrera's
behalf, instead relying on a lien it placed against any recovery
by Herrera in her action against that party.[3]  While purporting
to sue as the subrogee of Herrera, as its insured, Aetna is
actually suing to recover for its own losses due to incorrect
billing, rather than Herrera's losses (see Federal Ins. Co. v
Spectrum Ins. Brokerage Servs., 304 AD2d 316, 317 [1st Dept

---

[3] The validity of that lien, which has been asserted in a
separate action, is not before us.

2003]).  That is not true subrogation.

As the dissent suggests, it would certainly be easier for Aetna to proceed against Hanover for all of the bills paid on Herrera's behalf, rather than pursuing multiple medical providers for repayment of each of their bills.  However, we have long held that "equity will not entertain jurisdiction where there is an adequate remedy at law" (Boyle v Kelley, 42 NY2d 88, 91 [1977]; see Lichtyger v Franchard Corp., 18 NY2d 528, 537 [1966]; Lewis v City of Lockport, 276 NY 336, 342 [1938]).  Thus, while equity is, indeed, a flexible concept, it may not be invoked when an adequate remedy exists at law, merely because a party would prefer an easier route to recovery.

In that regard, we emphasize that Aetna may seek recovery from the medical providers that improperly billed Aetna for treatment that should have been covered by Hanover. Contracts between Aetna and the treatment providers -- which are not in the record before us -- may even spell out the right to, and procedures for, such clawbacks.  The medical providers could then submit their bills to Hanover for payment under Herrera's no-fault policy.[4]  The availability to Aetna of this legal remedy

---

[4] Under this scenario, while Hanover might deny payment due to untimely submission (see 11 NYCRR 65-1.1), the medical providers would be the ones suffering the loss of payment, which would not be inequitable because they submitted the bills to the incorrect insurer in the first instance.  This only highlights how permitting Aetna to recover via equitable subrogation would be inconsistent with the no-fault scheme, especially the insistence on timely resolution of claims (see e.g. Insurance Law

renders inappropriate the expansion of equitable subrogation into the complex and comprehensive no-fault scheme.  Finally, providing an equitable remedy could create additional burdens on the courts -- which is contrary to one of the purposes of the No-Fault Law (see Hospital for Joint Diseases v Travelers Prop. Cas. Ins. Co., 9 NY3d 312, 317 [2007]) -- and would complicate and add confusion to that statutory and regulatory scheme.  Accordingly, the lower courts properly concluded that Aetna's complaint should be dismissed.

---

§ 5106 [a]; 11 NYCRR 65-1.1, 65-2.4 [b], [c], 65-3.8 [c]).

Aetna Health Plans &c. v Hanover Insurance Company

No. 97

FAHEY, J.(dissenting):

I respectfully dissent because, in my view, Supreme Court erred in granting defendant's cross motion to dismiss the complaint.

I generally agree with the majority's recitation of the relevant facts. Both parties accepted premiums in exchange for the assumption of an obligation to insure Luz Herrera. Plaintiff covered Herrera pursuant to a policy of health insurance, while defendant provided coverage for her under a policy of automobile insurance, which included personal injury protection (PIP)(see 11 NYCRR 65-1.1 [d] [mandatory PIP endorsement]). In April 2008, Herrera was injured in an automobile accident; afterwards, defendant paid some, but not all, of the costs of medical treatment Herrera received as a result of the personal injuries she sustained in that incident. The balance of those costs was paid by plaintiff in its capacity as Herrera's health insurer. Plaintiff subsequently asserted a lien against any recovery Herrera may have in the personal injury action she commenced in relation to the accident. At some point, Herrera assigned her rights against defendant to plaintiff.

- 1 -

According to plaintiff, its involvement in payment for Herrera's medical care following the accident is attributable to the fact that Herrera's medical providers mistakenly submitted bills for treatment of her accident-related injuries to plaintiff when, in fact, such bills should have been tendered to defendant. No matter, those facts speak to the core problem underlying this appeal, that is, that plaintiff, as Herrera's health insurer, paid medical expenses arising from the accident that defendant, Herrera's no-fault insurer, should have paid and has since refused to pay.

Based on those facts plaintiff commenced this action seeking damages in the amount of medical expenses that it had paid on Herrera's behalf in defendant's stead. In my view, the claims asserted in the complaint speak to what effectively is a single cause of action sounding in equitable subrogation. I also believe that, on this record, plaintiff should be permitted to pursue that subrogation cause of action.

Subrogation, of course, "is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss" (Winkelmann v Excelsior Ins. Co., 85 NY2d 577, 581 [1995]; see generally 16 Couch on Ins. § 225:5 [3d ed]).[1] Said another way, "[s]ubrogation allocates

---

[1]      Although subrogation has its roots in equity (see ELRAC, Inc. v Ward, 96 NY2d 58, 75 [2001]; North Star Reins. Corp. v Continental Ins. Co., 82 NY2d 281, 294 [1993]), we have recognized a right of subrogation based on a contractual

responsibility for the loss to the person who in equity and good

conscience ought to pay it, in the interest of avoiding

absolution of a wrongdoer from liability simply because the

insured had the foresight to procure insurance coverage" (North

Star Reins. Corp., 82 NY2d at 294; see Millennium Holdings LLC v

Glidden Co., __ NY3d __, 2016 NY Slip Op 03543, *5-6 [May 5,

2016] [same]).  "The right arises by operation of law when the

insurer makes payment to the insured" (North Star Reins. Corp.,

82 NY2d at 294), and the doctrine

> "is broad enough to include every instance in
> which one party pays a debt for which another
> is primarily answerable and which in equity
> and good conscience should have been
> discharged by the latter, so long as the
> payment was made either under compulsion or
> for the protection of some interest of the
> party making the payment, and in discharge of
> an existing liability" (Gerseta Corp. v
> Equitable Trust Co. of N.Y., 241 NY 418, 425-
> 426 [1926]).

In concluding that the Appellate Division order should

be affirmed, the majority suggests that to permit plaintiff to

proceed against defendant here would be inconsistent with the no-

fault scheme (see majority op., at 1-2, 7).[2]  As the theory goes,

_____

relationship, that is, "where the subrogee's rights are defined
in an express agreement between the insurer-subrogee and the
insured-subrogor" (Federal Ins. Co. v Arthur Andersen & Co., 75
NY2d 366, 372 [1990]).  That doctrine of "contractual
subrogation" is distinguishable from the principle of "equitable
subrogation" at issue here.

[2]     The majority also concludes that plaintiff cannot
proceed against defendant here because Herrera assigned her
rights against defendant to her medical providers and therefore
no longer has "shoes" in which to permit plaintiff to "stand" on

because plaintiff is not a "provider[] of health care services" within the meaning of 11 NYCRR 65-3.11 (a), it is ineligible to receive direct payment from defendant.

Nothing in the no-fault scheme precludes plaintiff from pursuing this action. Trouble with respect to a *remedy* does not equate to trouble with respect to the *merits* of a cause of action. Recovery with respect to plaintiff's cause of action -- which, as noted, in my view sounds in equitable subrogation -- would be indirect. That is, plaintiff, likely barred from receiving direct payments from defendant by the no-fault regulations (see 11 NYCRR 65-3.11 [a]), theoretically would seek reimbursement through the medical providers to be reimbursed by defendant pursuant to the responsibilities defendant may have under the policy of automobile insurance through which it covers Herrera (see 11 NYCRR 65-1.1 [d] [including the requirement that the insurer "will pay first-party benefits to reimburse for basic economic loss sustained by an eligible injured person on account of (qualifying) personal injuries," subject to the insured's satisfaction of policy conditions]). Those providers, in turn,

---

her behalf (see majority op., at 7). Even assuming, arguendo, that Herrera had assigned the right to direct payment from defendant to her health care providers (see 11 NYCRR 65-3.11 [a]), she retained both her right to seek enforcement of defendant's obligations under the mandatory PIP endorsement (11 NYCRR 65-1.1 [d]) and the ability to assign that right.

would reimburse plaintiff for double payments, that is, full payments made by both plaintiff and defendant for a single service rendered, either voluntarily or pursuant to contractual clawback efforts initiated by plaintiff. A meandering path to recovery does not mean that an equitable subrogation "road" to plaintiff is closed here.[3]

Finally, in my view, permitting plaintiff to proceed with its equitable subrogation cause of action is consistent with the purpose of the no-fault scheme. Complex as the scheme may be (see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 286 [1997], rearg denied 90 NY2d 937 [1997]), its mission includes consumer protection through a structure designed to limit costs and promptly resolve injury claims (see Pommells v Perez, 4 NY3d 566, 570-571 [2005]). Here, although Herrera has been harmed *twice* -- through both the accident and the lien placed by plaintiff on any recovery she may have with respect to that incident -- defendant has not been required to answer for

---

[3] The majority essentially concludes that the no-fault scheme preempts or forecloses a common law remedy here because of the difficulty inherent in recovering with respect to that cause. However, there is always room for equity.

its claims handling and coverage determination.[4]  No-fault was designed to avoid such a result.

It is beyond dispute that the no-fault scheme was not intended to impose upon an injured person such as Herrera either the significant additional burden of the lien in question or the toll associated with discharging that claim and seeking to hold defendant to its coverage obligations.  That the scheme is comprised of a thicket of rules and regulations does not mean that the inequitable result here should stand.

For the foregoing reasons I would hold that the lower courts erred in concluding that the complaint should be summarily dismissed, and I would modify the Appellate Division order by denying defendant's cross motion.

---

[4]     It may be that defendant has a valid defense to coverage based on Herrera's delay in notifying defendant of her claims (see 11 NYCRR 65-1.1 [d] [providing, in relevant part, that in the case of a claim for health services rendered, an eligible injured person shall submit written proof of a claim within 45 days after the date services were rendered unless there is a clear and reasonable justification for the failure to comply with that time limitation]).  However, the questions whether Herrera gave timely notice of her claims and, if not, whether defendant is precluded from denying some or all of those claims (see Presbyterian Hosp. in City of N.Y., 90 NY2d at 278; see also Mount Sinai Hosp. v New York Cent. Mut. Fire Ins. Co., 120 AD3d 561, 562 [2d Dept 2014]) are not now for this Court given the posture of this case.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed, with costs.  Opinion by Judge Pigott.  Chief
Judge DiFiore and Judges Abdus-Salaam, Stein and Garcia concur,
Judge Stein in a concurring opinion.  Judge Fahey dissents in an
opinion in which Judge Rivera concurs.


Decided June 14, 2016