Fahey, J.
(dissenting). I respectfully dissent because, in my view, Supreme Court erred in granting defendant’s cross motion to dismiss the complaint.
I generally agree with the majority’s recitation of the relevant facts. Both parties accepted premiums in exchange for the assumption of an obligation to insure Luz Herrera. Plaintiff covered Herrera pursuant to a policy of health insurance, while defendant provided coverage for her under a policy of automobile insurance, which included personal injury protection (PIP) (see 11 NYCRR 65-1.1 [d] [mandatory PIP endorsement]). In April 2008, Herrera was injured in an automobile accident; afterwards, defendant paid some, but not all, of the costs of medical treatment Herrera received as a result of the personal injuries she sustained in that incident. The balance of those costs was paid by plaintiff in its capacity as Herrera’s health insurer. Plaintiff subsequently asserted a lien against any recovery Herrera may have in the personal injury action she commenced in relation to the accident. At some point, Herrera assigned her rights against defendant to plaintiff.
According to plaintiff, its involvement in payment for Herrera’s medical care following the accident is attributable to the fact that Herrera’s medical providers mistakenly submitted bills for treatment of her accident-related injuries to plaintiff when, in fact, such bills should have been tendered to defendant. No matter, those facts speak to the core problem underlying this appeal, that is, that plaintiff, as Herrera’s health insurer, paid medical expenses arising from the accident that defendant, Herrera’s no-fault insurer, should have paid and has since refused to pay.
Based on those facts plaintiff commenced this action seeking damages in the amount of medical expenses that it had paid on Herrera’s behalf in defendant’s stead. In my view, the claims asserted in the complaint speak to what effectively is a single cause of action sounding in equitable subrogation. I also believe that, on this record, plaintiff should be permitted to pursue that subrogation cause of action.
Subrogation, of course, “is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss” (Winkelmann v Excelsior Ins. Co., 85 *588 NY2d 577, 581 [1995]; see generally 16 Steven Plitt et al., Couch on Insurance 3d § 225:5).[1] Said another way, “[s]ubrogation allocates responsibility for the loss to the person who in equity and good conscience ought to pay it, in the interest of avoiding absolution of a wrongdoer from liability simply because the insured had the foresight to procure insurance coverage” (North Star Reins. Corp., 82 NY2d at 294; see Millennium Holdings LLC v Glidden Co., 27 NY3d 406, 414 [May 5, 2016] [same]). “The right arises by operation of law when the insurer makes payment to the insured” (North Star Reins. Corp., 82 NY2d at 294), and the doctrine
“is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability” (Gerseta Corp. v Equitable Trust Co. of N.Y., 241 NY 418, 425-426 [1926]).
In concluding that the Appellate Division order should be affirmed, the majority suggests that to permit plaintiff to proceed against defendant here would be inconsistent with the no-fault scheme (see majority op at 579, 582-583).[2] As the theory goes, because plaintiff is not a “provider [ ] of health care services” within the meaning of 11 NYCRR 65-3.11 (a), it is ineligible to receive direct payment from defendant.
Nothing in the no-fault scheme precludes plaintiff from pursuing this action. Trouble with respect to a remedy does not *589 equate to trouble with respect to the merits of a cause of action. Recovery with respect to plaintiff’s cause of action— which, as noted, in my view sounds in equitable subrogation— would be indirect. That is, plaintiff, likely barred from receiving direct payments from defendant by the no-fault regulations (see 11 NYCRR 65-3.11 [a]), theoretically would seek reimbursement through the medical providers to be reimbursed by defendant pursuant to the responsibilities defendant may have under the policy of automobile insurance through which it covers Herrera (see 11 NYCRR 65-1.1 [d] [including the requirement that the insurer “will pay first-party benefits to reimburse for basic economic loss sustained by an eligible injured person on account of (qualifying) personal injuries,” subject to the insured’s satisfaction of policy conditions]). Those providers, in turn, would reimburse plaintiff for double payments, that is, full payments made by both plaintiff and defendant for a single service rendered, either voluntarily or pursuant to contractual clawback efforts initiated by plaintiff. A meandering path to recovery does not mean that an equitable subrogation “road” to plaintiff is closed here.[3]
Finally, in my view, permitting plaintiff to proceed with its equitable subrogation cause of action is consistent with the purpose of the no-fault scheme. Complex as the scheme may be (see Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 286 [1997], rearg denied 90 NY2d 937 [1997]), its mission includes consumer protection through a structure designed to limit costs and promptly resolve injury claims (see Pommells v Perez, 4 NY3d 566, 570-571 [2005]). Here, although Herrera has been harmed twice — through both the accident and the lien placed by plaintiff on any recovery she may have with respect to that incident — defendant has not been required to answer for its claims handling and coverage determination.[4] No-fault was designed to avoid such a result.
*590 It is beyond dispute that the no-fault scheme was not intended to impose upon an injured person such as Herrera either the significant additional burden of the lien in question or the toll associated with discharging that claim and seeking to hold defendant to its coverage obligations. That the scheme is comprised of a thicket of rules and regulations does not mean that the inequitable result here should stand.
For the foregoing reasons I would hold that the lower courts erred in concluding that the complaint should be summarily dismissed, and I would modify the Appellate Division order by denying defendant’s cross motion.
Chief Judge DiFiore and Judges Abdus-Salaam, Stein and Garcia concur; Judge Stein in a concurring opinion; Judge Fa-hey dissents in an opinion in which Judge Rivera concurs.
Order affirmed, with costs.

. Although subrogation has its roots in equity (see ELRAC, Inc. v Ward, 96 NY2d 58, 75 [2001]; North Star Reins. Corp. v Continental Ins. Co., 82 NY2d 281, 294 [1993]), we have recognized a right of subrogation based on a contractual relationship, that is, “where the subrogee’s rights are defined in an express agreement between the insurer-subrogee and the insured-subrogor” (Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d 366, 372 [1990]). That doctrine of “contractual subrogation” is distinguishable from the principle of “equitable subrogation” at issue here.

. The majority also concludes that plaintiff cannot proceed against defendant here because Herrera assigned her rights against defendant to her medical providers and therefore no longer has “shoes” in which to permit plaintiff to “stand” on her behalf (see majority op at 582-583). Even assuming, arguendo, that Herrera had assigned the right to direct payment from defendant to her health care providers (see 11 NYCRR 65-3.11 [a]), she retained both her right to seek enforcement of defendant’s obligations under the mandatory PIP endorsement (11 NYCRR 65-1.1 [d]) and the ability to assign that right.

. The majority essentially concludes that the no-fault scheme preempts or forecloses a common-law remedy here because of the difficulty inherent in recovering with respect to that cause. However, there is always room for equity.

. It may be that defendant has a valid defense to coverage based on Herrera’s delay in notifying defendant of her claims (see 11 NYCRR 65-1.1 [d] [providing, in relevant part, that in the case of a claim for health services rendered, an eligible injured person shall submit written proof of a claim within 45 days after the date services were rendered unless there is a clear and reasonable justification for the failure to comply with that time limitation]). However, the questions whether Herrera gave timely notice of her *590 claims and, if not, whether defendant is precluded from denying some or all of those claims (see Presbyterian Hosp. in City of N.Y., 90 NY2d at 278; see also Mount Sinai Hosp. v New York Cent. Mut. Fire Ins. Co., 120 AD3d 561, 562 [2d Dept 2014]) are not now for this Court given the posture of this case.